**The People of the State of Illinois, Plaintiff-Appellee, v. Ernest Potter, Defendant-Appellant.**

**Gen. No. 10,836.**

Fourth District.

July 5, 1967.

Schimmel & Schimmel, of Pittsfield (Albert W. Schimmel, of counsel), for appellant.

Cecil J. Burrows, State's Attorney of Pike County, of Pittsfield, for appellee.

SMITH, J.

Found to be a sexually dangerous person under the provisions of our Sexually Dangerous Persons Act, Ill Rev Stats 1965, c 38, par 105–1.01 et seq., the defendant appeals from an order of the Circuit Court committing him to the custody of the Director of Public Safety as required by the Act. He levels a one-two punch against his conviction on the theory that he was deprived of his constitutional rights in that procedural due process and his privilege against self-incrimination were each denied him.

He was charged with the crime of public indecency. Ill Rev Stats 1965, c 38, § 11–9. A warrant was duly issued and he was arrested. The arresting officer testified that he told the defendant why he was under arrest and that the defendant did not have to talk to him. The defendant said he didn't need a lawyer, that he would not say anything he did not want to, and that he would go to the lady's house to see if he was the right man. The complaining witness in the pending case was not at home and the officer then advised him that he had had several complaints about public indecency and exhibitionism and took him then to nine other young girls for purposes of identification. This occurred on May 19, 1966. On May 26, the State's Attorney filed a petition charging the defendant with being a sexually dangerous person. On this

same day he was taken into court and an order appointing two psychiatrists to examine him was entered. On June 3, he was taken to Quincy, Illinois, and examined by the two appointed psychiatrists. On June 7, 1966, an attorney was appointed by the court to represent him. The reports of the psychiatrists were filed in court and the trial on the sexually dangerous persons charge began on August 12. The petition filed by the State's Attorney alleged five different acts of exhibitionism occurring on various previous dates at various different places before various people. Defendant apparently talked freely to the psychiatrists and they both testified that the defendant told them in substance that he was charged with exposing himself to young girls; that he was under sentence and on probation for similar occurrences in Missouri; that he was unable to state why he did these things; that he was aware they were wrong, but was unable to control his behavior. Over objection, both were allowed to express the opinion that he was a sexually dangerous person. The defendant asserted in the trial court and here that prior to the appointment of his attorney, he was never advised by anybody of his statutory and constitutional rights in this proceeding.

It is conceded by the State's Attorney that the information given to the psychiatrists by the defendant was self-incriminating and subjected him to possible multiple prosecutions under the Public Indecency Statute. Instead of prosecuting these, the State's Attorney elected to file a petition under the Sexually Dangerous Persons Act setting forth five different circumstances or occurrences. We thus come face to face with a question of procedural due process and the constitutional privilege against self-incrimination.

Section 105–3.01 of the Sexually Dangerous Persons Act declares the proceeding to be civil in nature and our Supreme Court has so construed it. People v. Sims, 382 Ill 472, 47 NE2d 703; People v. Redlich, 402 Ill 270, 83

NE2d 736; People v. Capoldi, 10 Ill2d 261, 139 NE2d 776; People v. English, 31 Ill2d 301, 201 NE2d 455; People v. Jenneski, 36 Ill2d 624, 225 NE2d 19; People v. Nastasio, 19 Ill2d 524, 168 NE2d 728. Nevertheless, in these same cases, the Supreme Court recognized and imposed procedural safeguards normally applicable only where procedural due process in criminal cases is involved. The determination to be made under the Act is whether or not the defendant is suffering from a mental disorder. This is a status determination. Call them civil commitments if you will, nevertheless, their end result is incarceration, incarceration for an indeterminate time and until there is a probationary discharge or a final discharge based on recovery from the mental disorder. In construing a similar sex offender statute, the United States Supreme Court said: "These commitment proceedings whether denominated civil or criminal are subject both to the Equal Protection Clause of the Fourteenth Amendment as we held in Baxstrom v. Herold, 383 US 107, 15 L Ed2d 620, 86 S Ct 760, and to the Due Process Clause." Specht v. Patterson, 386 US 605, 18 L Ed2d 326, 87 S Ct 1209. Justice dictates that the State should have the right to confine those who because of mental illness are a danger to the public welfare and safety. Justice likewise dictates that such confinement shall be only in proper cases and only in a proper manner. Specht states unequivocally that this includes the right to counsel. Our own Supreme Court has just recently stated that on a recovery petition under the Sexually Dangerous Persons Act, the defendant is entitled to both court-appointed counsel and a jury trial. People v. Capoldi, 37 Ill2d 11, 225 NE2d 634. This brings us to the question then as to what stage in the proceedings shall the defendant have an explanation of his rights and when shall his attorney be appointed.

In the instant case, counsel was not appointed until after the psychiatric examination. The defendant had not then been advised of his constitutional privilege against

self-incrimination in his statements to the psychiatrists as our Supreme Court requires. People v. English, 31 Ill 2d 301, 201 NE2d 455. The hole in the bucket was plugged after the water had been pretty well drained out. In English, the State urged that the defendant could be fully protected by grant of immunity from criminal prosecution on account of any statements, self-incriminating, made to the psychiatrists. Our Supreme Court repudiated this doctrine and stated that the removal of the constitutional privilege by grant of immunity is not for the courts but must be left to the Legislature. Posited in this factual and legal format, the defendant thus claims that the principles of Miranda v. State of Arizona, 384 US 436, 16 L Ed2d 694, 86 S Ct 1602, are applicable to this proceeding.

Miranda articulates the requirements that must be met before statements made by a defendant in an in-custody interrogation are admissible against him in a criminal case. Decisionally, Miranda is restricted to a criminal case. It is urged by the State that Miranda should not apply to a proceedings such as this, civil in nature, and should be confined only to a criminal case in its specific pronouncements. It is urged that Miranda would be more appropriately applicable to criminal prosecutions arising out of criminal prosecutions for the underlying sex acts, occurrences, and transactions. Our Legislature has granted immunity from prosecution after discharge on any outstanding information or indictment which formed the basis by which the original commitment was made. Ill Rev Stats 1965, c 38, § 105–9. There is no purported protection against self-incriminating testimony based on other occurrences of sexual crimes not yet ripened into either an information or indictment. Thus, in the meantime, the defendant enjoys his indeterminate confinement awaiting a discharge when on these subsequent prosecutions he may then exercise his constitutional privilege against self-incrimination and then en-

155

joy due process of law. The end result is a practical prostitution of constitutional rights and privileges. We have already observed that whether the commitment is civil or criminal, the straitjacket on the freedom of the individual is judicially imposed. Neither sound logic nor fundamental justice dictates that the constitutional protectives may be ignored in the one and must be followed in the other. In re Gault, 387 US 1, 18 L Ed2d 527, 87 S Ct 1428, the United States Supreme Court reviewed the Juvenile Court Act of the State of Arizona, recognized that its proceedings were denominated "civil" and held that the constitutional safeguards against self-incrimination nevertheless apply. The end result of such proceedings, the court said, is incarceration against one's will whether it is called "civil" or "criminal." The defendant was discharged. The end result under our Sexually Dangerous Persons Act is incarceration for an indeterminate period of time and is against one's will. It is thus crystal clear to us that the road map laid down in Miranda must be followed in proceedings under our Sexually Dangerous Persons Act as to in-custody interrogation.

The defendant was in custody when this proceeding was instituted. He was entitled to his constitutional privilege against self-incrimination and to the appointment of counsel prior to psychiatric examination unless these rights were knowingly and understandingly waived. This record shows no such waiver. Accordingly, this case must be reversed and remanded to the trial court for a new trial in accordance with the views herein expressed.

Reversed and remanded with directions.

CRAVEN, P. J. and TRAPP, J., concur.