**People of the State of Illinois, Plaintiff-Appellee, v. Arthur John Beksel, Defendant-Appellant.**

Gen. No. 69–84.

Second District.

July 29, 1970.

Eugene R. Pigatti, Jr., of Rockford, for appellant.

Philip G. Reinhard, State's Attorney of Winnebago County, of Rockford and William R. Reu, Assistant State's Attorney, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

Defendant, Arthur John Beksel, was committed to the sanitarium at Menard for an indeterminate period as a sexually dangerous person. A criminal complaint was filed in the Circuit Court of Winnebago County by Pearl Franklin, the mother of Susan Edwards, against him alleging that he committed the offense of indecent liberties with the child in violation of paragraph 11–2, chapter 38, Ill Rev Stats 1967, on May 13, 1968. Thereafter, a two-count indictment filed October 17, 1968, recited that "Arthur Beksel, a person of the age of 17 years and upwards (1) committed the offense of indecent liberties with a child, in that he performed an act of sexual intercourse with Susan Jane Edwards, a child under the age of 16 years in violation of par 11–4 (1), ch 38, Ill Rev Stats, and (2) committed the offense of indecent liberties with a child in that he, with intent to arouse his sexual desires lewdly fondled or touched the private parts of Susan Jane Edwards, a child under the age of 16 years, in violation of par 11–4(3), ch 38, Ill Rev Stats."

On October 22, 1968, the State filed a petition, under section 105, chapter 38, Ill Rev Stats entitled "An act in relation to sexually dangerous persons, and providing for their commitment, detention and supervision," requesting the court to appoint two qualified psychiatrists to make a personal examination of the defendant to ascertain whether the defendant is a sexually dangerous

■■■■■■■■

person and that they file a report in writing of the results of their examinations.

The petition, as amended on October 24, 1968, alleged that the defendant is charged in the indictment with the offense of indecent liberties with a child (Susan Jane Edwards) ; that defendant is charged also with the offense of rape, the victim being a 13-year-old girl (Susan Longardner) and that on October 17, 1960, the defendant entered a plea of guilty to the offense of assault with intent to commit a lewd and lascivious act upon a 16-year-old girl, for which he was placed on probation for three years, served six months in the county jail and paid a fine of $300; also, that defendant is suffering from a mental disorder which has existed for more than one year prior to the filing of the petition, coupled with criminal propensities towards acts of sexual assault and acts of sexual molestation of children and is deemed a sexually dangerous person.

The court appointed Drs. Graybill and Hamann to make the examinations. Dr. Graybill examined the defendant on October 25, 1968, and on November 12, 1968, reported that his clinical diagnosis of the defendant indicated a severe depressive reaction in a sexually deviate personality. "There is no doubt that this man is sexually dangerous but he appears motivated at this time to seek some form of help. Long-term institutional care with individual psychotherapy is recommended for Mr. Beksel," said Dr. Graybill. Dr. Hamann's report of November 21, 1968, stated on October 29, 1968, he examined the defendant and that defendant was not mentally retarded or defective, but would be classified as having a sociopathic personality disturbance with sexual deviation. He further stated that if the charges were true against the defendant, he would classify him as a sexually dangerous person.

On October 22, 1968, at the time of arraignment on the indictment, a privately retained attorney appeared on behalf of the defendant. The petition under the Sexually Dangerous Persons Act was filed under the same case number as required. On November 14, 1968, Attorney Alex Victor withdrew as defense attorney and the Public Defender was appointed by the court to represent the defendant. On February 10, 1969, a bench trial was held on the petition and the judge, after hearing all the evidence, found that defendant was a sexually dangerous person and ordered him committed to the Illinois State Penitentiary at Menard. This appeal followed.

The issues as presented to this court are: (1) Can a person be committed as a sexually dangerous person if the acts are against an adult or whether they must involve children and, if so, what does the word "child" mean, as far as age is concerned, under the Act; (2) was defendant denied his right to counsel before signing a waiver and confession, before being examined by psychiatrists, and before being put in a lineup; (3) was the confession coerced, and in such a proceeding is not defendant entitled to the constitutional guarantees required in a criminal prosecution; (4) was the finding of guilty contrary to the law and the evidence.

The statute involved is chapter 38, section 105–1.01, Ill Rev Stats 1967, as follows:

"All persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts

of sexual molestation of children, are hereby declared sexually dangerous persons."

This Act does not define "children" and we have found no case wherein any Illinois court has been called upon to establish the age limitation for the purpose of this Act. Both the State and the defendant urge that "children" be defined as applied to this Act since it appears to be a question of first impression.

Before reaching that question, it seems proper to first determine the issue presented as to whether the Act only applies to persons who commit sex crimes upon children. We are of the opinion that the language of the Act, "coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward act of sexual assault or acts of sexual molestation of children" does not require the interpretation that both "sexual assault" and "sexual molestation" refer to children. The statute has the word "or" between these two types of sex crimes and "or" in its normal context means just what it says, i. e., the defendant has to be suffering from a mental disorder which has existed for not less than one year and has demonstrated propensities toward acts of sexual assault *or* acts of sexual molestation of children. The phrase "sexual assault" appears to refer to sex crimes involving force (assault), and acts of sexual molestation of children are acts which basically involve the incapacity of the victim to consent to primarily consensual acts (molestation). Logically, a sexually dangerous person is a person who is suffering from a mental disorder and who has criminal propensities for sexual assault, regardless of whether the victim is a child or an adult. In either event, he has a mental disorder, is dangerous to society, and should properly receive treatment for the protection of society and his own rehabilitation.

■ ■ It is to be noted that at least two of the crimes herein alleged and described later in this opinion involve forceful sexual assault. Therefore, reading the language of the Act in its natural import, we believe a person can be found guilty of being a sexually dangerous person although the forceful acts involved are against adults, as well as to children. Even if the Act is construed as to involve children only, we believe that the definition of children should come from section 11–5 of the Criminal Code (Ill Rev Stats 1967, c 38, par 11–5) entitled "Contributing to the sexual delinquency of a child" wherein it is provided as follows:

"(a) Any person of the age of 14 years and upwards who performs or submits to any of the following acts with any person under the age of 18 contributes to the sexual delinquency of a child:

"1) Any act of sexual intercourse or

"2) Any act of deviate sexual conduct or

"3) Any lewd fondling or touching of either the child or the person done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the person or both; or

"4) Any lewd act done in the presence of the child with the intent to arouse or to satisfy the sexual desires of either the person or the child or both."

The defendant urges since "children" is not defined in the Act in question, that chapter 23, section 2401, Ill Rev Stats 1967, "Charities and Public Welfare," should apply and that, therefore, a child under the Sexually

Dangerous Persons Act should be a child "under the age of 13 years." This section reads as follows:

> "In all cases in which a person of the age of 17 years and upwards is charged with a violation of a statute or ordinance, the basis of the charge being a sexual crime against a child under the age of 13 years, the trial of such charge shall be in a circuit court."

As no child herein involved is under the age of 13 years, it is defendant's contention that the court could not find the defendant guilty under the Sexually Dangerous Persons Act.

█ Although the precise question of whether a child under the Act in question means a child under the age of 18 or a child under the age of 13 was not reached, this court in People v. Harter, 86 Ill App2d 461, 230 NE2d 15, affirmed a judgment of the trial court determining the defendant to be a sexually dangerous person where an information charged defendant with contributing to the sexual delinquency of a minor of the age of 17 and cited in the opinion, at page 467, the definition of "child" under section 11–5 of the Criminal Code. As we are dealing with sex crime repeaters who have a mental disorder of at least one-year duration and who have criminal propensities, we perceive no reason for covering less than all sex crimes involving children under this Act, and particularly, no reason for limiting the criminal sexual activity to children under the age of 13. The children with whom the defendant was found to have committed sex crimes in our case were 13, 14 and 16 years of age, and come within the definition of "children" which we have applied to the Sexually Dangerous Persons Act.

■ As to defendant's claim that his various constitutional rights were violated, we must first determine if the safeguards normal to criminal prosecution are to be followed, even though the proceedings under the Sexually Dangerous Persons Act are civil in nature. This Act provides for involuntary confinement, although it is primarily for the treatment of the defendant rather than criminal punishment. Since the defendant's individual liberty is involved, certain safeguards of a criminal prosecution must be applied to proceedings under this Act, although this does not mean that such proceedings are a criminal prosecution or that all of the safeguards of a criminal procedure must be followed. The People v. English, 31 Ill2d 301, 307, 201 NE2d 455. In the English case, it was held that a defendant cannot be compelled to disclose criminal conduct as well as mental condition, although he may be compelled to submit to psychiatric examinations which do not call upon his testimonial capacity. In People v. Potter, 85 Ill App2d 151, 156, 228 NE2d 238 it was held not only that under the Sexually Dangerous Persons Act a defendant is entitled to his constitutional privilege against self-incrimination, but that he is also entitled to appointment of counsel prior to psychiatric examination unless such rights were knowingly and understandingly waived. Thus, it was said that the "road map" laid down in Miranda must be followed to proceedings under the Act as to in-custody interrogation. (See Miranda v. State of Arizona, 384 US 436.)

■ In our case, the record reveals that the defendant, upon being taken into custody, was advised at least three times prior to psychiatric examinations of his constitutional rights, and that at the time the psychiatrists were appointed his privately retained counsel was present. There is some confusion as to whether counsel real-

331

ized that he was representing the defendant on the sexually dangerous petition, as well as upon the crime charged in the indictment, but he was made aware of the fact that they were both filed under the same case number when the psychiatrists were appointed. He then apparently realized they were all a part of the same proceeding for which he was retained. The privately retained attorney remained counsel until his withdrawal, which was after the psychiatric examinations were completed. The defendant made no objection during the testimony of Dr. Graybill and Dr. Hamann on the grounds of self-incrimination. Under the circumstances here present, we see no violation of defendant's right against incriminating himself. Furthermore, not having asserted his claim of privilege against self-incrimination at the trial, defendant has waived this right and cannot now complain on review that the admission of the testimony violated his constitutional rights. The People v. Bruckman, 33 Ill2d 150, 152, 210 NE2d 537.

■ Defendant further claims he was not advised of his right to counsel prior to a lineup, upon which he says identification was based. Miranda v. State of Arizona, 384 US 436; United States v. Wade, 388 US 218 (1967); Gilbert· v. California, 388 US 263 (1967). This lineup concerns the identification of him by Susan Edwards. He states in regard to a lineup identification that he was placed in a lineup without the benefit of advice as to his right to counsel. The only testimony in the record concerning the lineup comes from Susan Edwards, and that was on cross-examination when she was asked if she was ever present at a police lineup. She testified that she was present at a police lineup about two months after the May 13th incident, but she was not asked whether the defendant was in that lineup. On redirect

examination she testified that the defendant was in that lineup, but there is absolutely no testimony that she identified him at that time. She did make an in-court identification of the defendant. There is no objection to identification procedure in the record and there are no facts in the record concerning the lineup, except that five men were present. Therefore, there are no facts before us that would indicate that the lineup was in any way unfair or that the defendant was, or was not denied counsel at the time of the lineup. Defendant in his own testimony does not make any statement that he was denied counsel or that there was an unfair lineup. The lineup question is raised for the first time on review and since there was no objection pertaining to this matter in the trial court, it cannot be considered on appeal. The People v. Bruckman, supra.

■ ■ Other contentions of the defendant are that in regard to his confession in the Longardner incident defendant was denied his right to counsel, that his confession resulted from coercion, and that the State failed to call all witnesses to his interrogation. Defendant did testify that he was advised of his rights prior to the interrogation and confession. Detective England testified that defendant did not make a request for counsel and that he was in a position at all times to hear defendant's conversations. The admissibility of a confession is for the trial court to decide and the court need not be convinced of the voluntary character of the confession beyond a reasonable doubt. The People v. Golson, 32 Ill2d 398, 402, 207 NE2d 68. Furthermore, on the issue of right to counsel, there is no requirement that the State call all persons involved in the interrogation. People v. Goad, 78 Ill App2d 105, 110, 222 NE2d 558.

 There was no motion to suppress the confession, but this matter comes up solely on the testimony elicited during the trial. It is true that where coercion is alleged in the obtaining of a confession the State must produce or satisfactorily explain the absence of material witnesses. The People v. Wright, 24 Ill2d 88, 92, 180 NE2d 689. Defendant testified that Detectives Wright and Wortman did not mistreat him, but that Detectives England and Ritter did mistreat him. It appears that first Detectives Wright and Wortman interrogated him and that thereafter interrogation was continued by England and Ritter. Under the circumstances, as revealed by the record, the testimony as to Wright and Wortman was not material to the issue of coercion. The absence of Detective Ritter from the trial was explained and Detective England stated that there was no mistreatment. The written waiver of defendant's constitutional rights prior to the signing of the confession was properly admitted into evidence. In addition, the facts reveal that there was no unreasonable detention of defendant without counsel. We cannot say that the trial court's decisions on these matters were manifestly erroneous.

Finally, it is contended that there is no adequate proof in the record upon which to base the finding that the defendant is a sexually dangerous person. Defendant also states that there is no competent testimony that any of the offenses were committed by him. The record of the defendant's plea of guilty to assault with intent to commit a lewd and lascivious act upon a 16-year-old girl in 1960 was admitted into evidence; a policewoman identified Arthur John Beksel as the same person who pled guilty to that act in 1960; and the defendant himself admitted that he pled guilty to that offense. The assault against Susan Longardner was adequately proved

by the testimony of Susan and James Longardner. Without going into the details of the assault, the evidence established that the defendant went into her bedroom at night, hit her with a flashlight and attempted to have sexual intercourse with her. Susan herself could not identify the man because of the lack of light, but her brother, James, clearly saw the defendant and identified him.

 Susan Edwards testified to the attack upon her and rape, and identified the defendant. Her testimony is corroborated by that of her mother, Pearl Franklin. Defendant denied that he was guilty of each charge, but admitted knowing Susan Longardner's mother and Susan Edwards' sister. The evidence sufficiently establishes the three separate acts of sexual assault by a preponderance of the evidence (People v. Harter, 86 Ill App2d 461, 468, 469, 230 NE2d 15) and the psychiatric examinations by two psychiatrists establish that the defendant suffered from a mental disorder of over one year's duration and was a sexually dangerous person.

Accordingly, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

DAVIS, P. J. and SEIDENFELD, J., concur.