THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CLYDE STINNETTE, Defendant-Appellant.

Second District   No. 76-114

Opinion filed May 31, 1977.

Ralph Ruebner and Mark Schuster, both of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (Phyllis J. Perko and Stephen M. Deitsch, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

Clyde A. Stinnette was indicted in Lake County for attempt to commit theft over $150. (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(b)(1).) After a bench trial he was found guilty and sentenced to a term of 1 to 3 years imprisonment, such term to be served consecutive to a prior Federal sentence.

Three issues are raised on appeal: (1) that the trial court erred in denying his motion to suppress certain physical evidence and defendant's statement; (2) that the use of stipulated testimony in his bench trial made the proceeding tantamount to a plea of guilty, thus requiring that he be

admonished pursuant to Supreme Court Rule 402 (Ill. Rev. Stat. 1975, ch. 110A, par, 402); and (3) that the consecutive sentence was based upon improper considerations.

Three witnesses testified at the hearing on the motion to suppress, Officer Robert Rydell and Sergeant Theodore Hironimus, both of the Lake Forest Police Department, and Lorene Tavernier, a teller at Midwest National Bank, Lake Forest. They stated that on September 3, 1975, while on routine patrol in the Lake Forest business district, Officer Rydell saw the defendant approach the walk-up window of the First National Bank, stay less than a minute and then enter the bank. Officer Rydell had become suspicious and radioed his superior, Sergeant Hironimus, who arrived on the scene just as defendant exited the bank, less than two minutes after entering. The officers observed Stinnette drive his car to the next block where he entered the Midwest National Bank. They followed, and as Sergeant Hironimus entered the bank he passed defendant who was leaving, again after only a short stay. Stinnette drove away and Officer Rydell followed him. Sergeant Hironimus then questioned Lorene Tavernier, the teller with whom Stinnette had spoken in the Midwest Bank, who testified that she told him that Stinnette had requested that she cash a government check for him, but she had declined as the firearms identification card he had presented to her looked irregular in that one end of the normally sealed plastic casing had been opened.

Hironimus radioed this information to Rydell, who then stopped defendant's car and asked him for his driver's license or some other identification. Defendant produced a firearms identification card which Rydell believed was invalid as one end of the casing was open and there appeared to be a photo of Stinnette added to it. He then asked Stinnette for the check in question and it was handed over to him. Hironimus arrived on the scene, examined the firearms identification card and check, believed the card to be invalid, and arrested Stinnette. Also seized at this time was a vehicle registration card which had been shown to both Officer Rydell and the bank teller. The check (social security) and both cards showed that they had been issued to one Emiliano Echevarria. *Miranda* warnings were then given, defendant was transported to the station, and upon being questioned by the officers he admitted that he had found the check and the identification cards, added his own picture to the firearms identification, and attempted to cash the check at the banks.

After hearing this testimony the trial judge denied the motion to suppress evidence of the firearms identification card, the vehicle registration card, the social security check, and the statement.

Counsel for defendant and the State then agreed to a stipulation that the testimony of these three witnesses would be the same at trial as at the motion hearing and that they need not be called again for trial purposes.

A bench trial took place the next day before the same judge in which witness Emiliano Echevarria testified that he had not received his September social security check, that the check in question bore his name and social security number, and that he had neither made the signature on the back of it nor given anyone permission to cash it. The court heard closing arguments, considered the evidence and found defendant guilty. No post-trial motions were made by defendant.

Defendants contends that the trial court erred in denying his motion to suppress evidence of the firearms identification card, the vehicle registration card, the social security check and his statement. Specifically, he argues that the officers had no lawful justification to stop and question him so that the evidence resulting from their improper acts must be suppressed and, in turn, such tainted evidence could not be considered in establishing probable cause, thus rendering his arrest invalid. He contends further that his statement to the police was tainted as a product of both the alleged illegal stop and arrest and concludes that the three items seized and the statement given should have been excluded from evidence at trial.

■■ ■ The State argues that since these contentions were not presented to the trial court in a post-trial motion as required by statute (Ill. Rev. Stat. 1975, ch. 38, par. 116—1) they are waived. The general rule is that issues not contained in a post-trial motion are deemed waived and cannot be urged as grounds for reversal on appeal. Although the appellate court may nevertheless take notice of plain errors affecting substantial rights under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)) and may take notice of defects in a criminal trial when the evidence is closely balanced, it is not mandated to do so. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) This rule has been applied in bench trial cases as well as in jury trial cases. *People v. Harvey* (1976), 41 Ill. App. 3d 869, 354 N.E.2d 393; *People v. Brantley* (1976), 43 Ill. App. 3d 616, 357 N.E.2d 105.

■■ In regard to these contentions we do not find plain error or defect affecting substantial rights, nor do we find the evidence closely balanced; therefore, by not raising them in a timely post-trial motion defendant has waived these issues.

■■ We will, however, briefly address the merits of these contentions. Officer Rydell observed the defendant's activities at the two banks and saw him enter his car and drive away. He stopped him for questioning only after having been informed by Sergeant Hironimus, who had also observed defendant, that defendant had attempted to cash a check using a firearms identification card believed to be false. The information raising the invalidity of the card originated from the bank teller who had dealt with defendant and claimed to have knowledge of the proper appearance

of a firearms identification card. The information provided by the bank teller and relayed to Rydell by Hironimus at the very least raised suspicion that defendant had attempted to commit theft by deception.

On this basis Officer Rydell had sufficient knowledge to reasonably infer from the circumstances known to him that the defendant had attempted to commit a crime and was authorized to then stop him for temporary questioning. (*Adams v. Williams* (1972), 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921; *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488; Ill. Rev. Stat. 1975, ch. 38, par. 107—14.) After stopping defendant, the officer did no more than ask for some identification and an explanation of the defendant's actions. (Ill. Rev. Stat. 1975, ch. 38, par. 107—14.) Since the temporary stop was justified the evidence gained therefrom could be considered in establishing probable cause for the arrest. In turn, the later statement was also admissible as it followed both a legal stop and arrest. We find that the trial judge properly denied the motion to suppress.

Defendant next contends that his trial was nothing more than a "stipulate bench trial" proceeding on a plea of not guilty which was tantamount to a plea of guilty and that the trial court's failure to provide him the protections afforded defendants entering pleas of guilty by Supreme Court Rule 402 (Ill. Rev. Stat. 1975, ch. 110A, par. 402) requires reversal of his conviction. He bases his contention on the fact that the bulk of the evidence at his trial consisted of his attorney's stipulation to the testimony of the three prosecution witnesses at the hearing on the motion to suppress.

■■ The court takes notice of the fact that no post-trial motions were filed in this case and finds that our earlier discussion of the waiver rule promulgated by the Illinois Supreme Court in *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856, is dispositive of this issue also. In any event we find no merit to this contention.

Our supreme court has held that a bench trial on stipulated evidence can become tantamount to a plea of guilty and that in such a case the guilty plea admonishments of Rule 402 are required. (*People v. Smith* (1974), 59 Ill. 2d 236, 319 N.E.2d 760; *People v. Stepheny* (1974), 56 Ill. 2d 237, 306 N.E.2d 872.) The procedure criticized by the supreme court is directed towards those cases wherein the defendant has stipulated to the truth of facts which establish guilt beyond a reasonable doubt (*People v. Collins* (1976), 37 Ill. App. 3d 202, 345 N.E.2d 730), where not only the evidence but the outcome has been stipulated and no factual or legal defense has been presented or preserved (*People v. Ford* (1976), 44 Ill. App. 3d 94, 357 N.E.2d 865). In *People v. Russ* (1975), 31 Ill. App. 3d 385, 334 N.E.2d 108, the court stated that in such cases the issue of whether compliance with Supreme Court Rule 402 was required turns on whether

or not a genuine defense was presented, by stipulation or otherwise. Where no defense whatever or a mere sham defense was presented, the proceeding was tantamount to a plea of guilty and compliance with Supreme Court Rule 402 was required.

In the instant case, however, the stipulated bench trial procedure criticized by the supreme court was not involved. It is clear from the statements of both the trial judge and defense counsel that defendant did not stipulate to the truth or existence of any facts. This is shown by the affirmative response of defense counsel to the following inquiry of the trial judge,

> "I gather your stipulation would simply be if they're called upon the trial in the case in chief they would testify the same. I gather what you're saying is you're not in any way stating that's sufficient to prove cause."

■■ We find that the stipulation involved here served only to dispense with the need to call at trial the witnesses who testified at the hearing on the motion to suppress to repeat their testimony; the proceeding was not tantamount to a plea of guilty and therefore it was not necessary that defendant have been admonished pursuant to Supreme Court Rule 402. See *People v. Ford* (1976), 44 Ill. App. 3d 94, 357 N.E.2d 865; *People v. Collins* (1976), 37 Ill. App. 3d 202, 345 N.E.2d 730.

Defendant's final contention concerns the imposition of a consecutive sentence. The applicable section of the Unified Code of Corrections states:

> "The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court may set forth in the record." (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(b).)

He argues that the trial judge showed insufficient justification for the imposition of a consecutive sentence by remarking,

> "And this court is convinced that considering the nature and circumstances of the offense here—the court would agree in this case that does not bear much weight—the history and character of the defendant does require that the public be protected from the continuing criminal conduct of this defendant."

■■ It is within the sound discretion of the trial court to impose a consecutive rather than concurrent sentence. (*People v. Perry* (1976), 38 Ill. App. 3d 81, 347 N.E.2d 340; *People v. Taylor* (1975), 29 Ill. App. 3d 1066, 332 N.E.2d 188.) We do not find an abuse of that discretion here. The trial court considered on the record both the nature and

circumstances of the offense and the history and character of the defendant. The trial judge was within the scope of his discretion in relying primarily on the history and character of the defendant as the basis for his decision. The defendant has a substantial record of prior convictions including armed robbery in 1956 and interstate transportation of stolen property in 1972. The trial judge expressed his opinion that defendant's long history of other nonviolent offenses would likely continue in his effort to support a $150 a day heroin habit, that his history showed that a drug rehabilitation program could only have a chance of success if he was incarcerated, and that a consecutive term was required to protect the public from his further criminal conduct. The trial court's decision on this matter is well supported by the facts of the case.

Affirmed.

RECHENMACHER, P. J., and BOYLE, J., concur.