THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES O. PETTIT, Defendant-Appellant.

Second District   No. 79-834

Opinion filed June 26, 1981.

Mary Robinson and Elizabeth Clarke, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Schumacher, State's Attorney, of Oregon (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE REINHARD delivered the opinion of the court:

This case involves an appeal from a judgment finding defendant, James O. Pettit, a sexually dangerous person within the definition of the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1979, ch. 38, par. 105—1.01 *et seq.*) and committing him to the Department of Corrections. Defendant appeals and asserts two grounds for reversal. First, defendant contends that the trial court erred in allowing him to stipulate to certain evidence, which resulted in his classification as a sexually dangerous person, without first admonishing him in order to ascertain the voluntariness of the stipulation. Defendant also asserts that certain statements made to his probation officer were obtained in violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and therefore should have been suppressed at his hearing.

On November 14, 1978, defendant was charged by indictment with eight counts of indecent liberties with a child, four counts of obscenity, and four counts of harmful material. On February 8, 1979, the State filed a petition for adjudication as a sexually dangerous person. The State alleged in its petition that defendant had been charged by indictment with the offense of indecent liberties with a child, Michael E.; that defendant had entered a plea of guilty to a previous charge of indecent liberties; that defendant was suffering from a mental disorder which had existed for more than one year prior to the filing of the petition and that the mental disorder was coupled with criminal propensities to commit sex crimes; that this was demonstrated by acts of sexual assault or molestation of children; and that he was deemed a sexually dangerous person. In his answer, defendant admitted that he had entered a plea of guilty to the previous charge of indecent liberties and also admitted that he had committed one of the indecent acts alleged in the petition with Michael E. Defendant, however, specifically denied the other incidents of indecent liberties and denied that he should be deemed a sexually dangerous person.

Pursuant to an order of the court, defendant was examined by two psychiatrists. Both psychiatrists diagnosed defendant's mental condition as pedophilia. Dr. Magnuson found defendant definitely to be a sexually dangerous person as defined by statute. It was the opinion of Dr. Kirts that defendant should be found a sexually dangerous person only if there was a strong evidentiary basis to the most recent incidents alleged in the petition.

The cause proceeded to a bench trial on May 16, 1979. At the hearing both parties stipulated that the psychiatrist's reports be admitted into evidence. Defense counsel also stipulated to the record of his prior conviction of indecent liberties with a child. After the stipulations were accepted, the State moved for judgment on the pleadings. The court

denied the motion, finding that the admissions along with the stipulations did not prove that defendant was a sexually dangerous person beyond a reasonable doubt.

The complaining witness, Michael E., then testified that defendant was living with his mother and himself, that defendant had shown him "dirty" films, and that defendant had made him perform various indecent acts on different occasions.

Next, defendant's probation officer, Henry Patterson, testified that defendant was on probation for the prior conviction of indecent liberties. Patterson further testified that on July 17, 1978, he had an interview with the defendant and the victim's mother, Mrs. E., concerning the alleged incidents. At the interview, defendant stated that he was sorry for what had happened and he admitted that he needed help. Counsel for defendant objected to the admission of this testimony as being violative of *Miranda* warnings, and the court overruled the objection. Defendant was not arrested until October 1, 1978.

Mrs. E. then testified that her neighbors, Mr. and Mrs. Johnson, informed her that defendant might be molesting her son. She stated that she confronted Michael with this, and he confirmed her suspicions.

Next, Mr. Johnson testified that defendant had told him in December of 1976 that he had had sexual relations with a young boy. Johnson then stated that when he learned that defendant was living with Mrs. E., he informed her of the possibility that defendant might also be having relations with Michael E. because of the prior incident. He further testified that after Mrs. E. talked with Michael E., they confronted the defendant who admitted indecent liberties with Michael E.

The court then determined that defendant was a sexually dangerous person and ordered that he be committed to the Department of Corrections of the State of Illinois.

Defendant's first contention on appeal is that it was error for the court to allow defendant to stipulate to the psychiatric reports, his previous conviction for indecent liberties, and the fact that he had committed one of the indecent acts alleged in the petition. Defendant asserts that since these three stipulations supplied sufficient evidence to result in his classification as a sexually dangerous person, said stipulations were tantamount to a plea of guilty and, as such, entitled him to an admonishment of the trial judge so that it could be determined if the stipulations were voluntary and intelligent.

■■ Illinois courts have held that certain due process requirements beyond those authorized under the Act are applicable to proceedings under Sexually Dangerous Persons Act as it pertains to the privilege against self-incrimination (*People v. English* (1964), 31 Ill. 2d 301, 201 N.E.2d 455), the right to confront witnesses and be present at all court proceedings

(*People v. Nastasio* (1960), 19 Ill. 2d 524, 168 N.E.2d 728) and the right to have the allegations against one be proved beyond a reasonable doubt. (*People v. Pembrock* (1976), 62 Ill. 2d 317, 342 N.E.2d 28.) Yet due process of law does not require that all the safeguards and procedural requirements of a criminal prosecution must be followed. *People v. Studdard* (1972), 51 Ill. 2d 190, 281 N.E.2d 678.

We disagree with defendant's claim that the procedure followed here violated his due process rights. The cases pertaining to stipulated bench trials, relied upon by the defendant, also do not support this contention. In *People v. Stepheny* (1974), 56 Ill. 2d 237, 306 N.E.2d 872, the supreme court held that the defendant was entitled to be admonished prior to the entry of what amounted to, in effect, a plea of guilty. In that case, however, the record at the post-conviction hearing showed that counsel for the defendant had previously agreed to a procedure that amounted to a plea of guilty on a lesser charge and the trial was a sham. Similarly, in *People v. Smith* (1974), 59 Ill. 2d 236, 319 N.E.2d 760, the supreme court held that the defendant must be admonished of the intended disposition of his trial when the parties stipulate both to the facts and that such evidence was sufficient to convict. These cases demonstrate that the stipulated bench trial will be deemed tantamount to a plea of guilty when the result itself has been agreed to prior to trial. Most recently our supreme court has further clarified *Stepheny* and *Smith* as follows:

> "These cases are distinguishable from the case before us. There is no evidence that Paul's criminal trial was a sham, as in *Stepheny*, or that he stipulated that the evidence was sufficient to convict, as in *Smith*. The appellate court found that where a defendant stipulates to facts underlying an offense but leaves the determination of guilt or innocence based on those facts to the trier of facts, the stipulation is not the equivalent of a guilty plea. We agree." *Thorton v. Illinois Founders Insurance Co.* (1981), 84 Ill. 2d 365, 372, 418 N.E.2d 744, 748.

In the case at bar, the trial judge specifically denied the State's motion for judgment on the pleadings stating that the admissions would be considered but the defendant's guilt would still have to be proved beyond a reasonable doubt. The court also stated that the stipulations were insufficient to prove the manner of the defendant's conduct hence a trial was still necessary. Likewise, in his answer, defendant specifically denied that he was suffering from a mental disorder, that he had a propensity to commit sex crimes, that he has demonstrated propensities towards acts of sexual assault or sexual molestation of children and that he was a sexually dangerous person. He further denied other allegations of sexual misconduct with Michael E. on three dates other than on June 16,

1978. Accordingly, the result, whether defendant was a sexually dangerous person, was not stipulated or agreed to.

The stipulations in this case, while admitting one sexual act with a child on June 16, 1978, and a prior conviction for indecent liberties with a child committed in 1976, still left for court determination whether the conduct established beyond a reasonable doubt that defendant was a sexually dangerous person as defined in section 1.01 of the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1979, ch. 38, par. 105—1.01):

> "All persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children, are hereby declared sexually dangerous persons."

Although the psychiatric reports were stipulated into evidence without calling the doctors to testify, that did not amount to an admission that he was a sexually dangerous person, but merely dispensed with evidentiary proof of their qualifications, examinations and diagnoses. Moreover, Dr. Kirts' diagnosis that defendant was a sexually dangerous person was qualified to the extent that the court must have strong evidence that the sexual acts were performed. In fact, defendant had specifically denied being a sexually dangerous person in his answer to the petition and denied multiple acts of molestation of Michael E., thereby requiring proof thereof. Defendant's attorney also stated that the defendant and he had discussed at length the admission to the one act on June 16, 1978, and the denial of the other acts. The court then specifically denied the State's motion for judgment on the pleadings considering the burden of proof and the insufficiency of the proof of the manner of defendant's conduct. ■■ Only after hearing four witnesses who essentially established multiple acts of molestation of Michael E. and testified to admissions by defendant of a problem and his need for help did the court find him to be a sexually dangerous person as defined by statute. Under these circumstances, even with the stipulations, the basic judicial function of determining defendant's status under the Sexually Dangerous Persons Act remained for the determination of the trial judge, and the procedure was not tantamount to a plea of guilty. *Thorton v. Illinois Founders Insurance Co.* (1981), 84 Ill. 2d 365, 418 N.E.2d 744; see also *People v. Sullivan* (1979), 72 Ill. App. 3d 533, 391 N.E.2d 241; *People v. Thorpe* (1977), 52 Ill. App. 3d 576, 367 N.E.2d 960; *People v. Stinnette* (1977), 49 Ill. App. 3d 134, 363 N.E.2d 945.

Defendant next argues that certain penitential statements made to his

probation officer were obtained without benefit of the *Miranda* warnings and were, therefore, erroneously admitted into evidence at the hearing. The State, in its brief, first argues that since defendant failed to make a motion prior to the trial to suppress the statements, the issue has been waived for purposes of appeal. The State cites section 114—11(g) of the Code of Criminal Procedure which provides that motions to suppress confessions "shall be made before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion." (Ill. Rev. Stat. 1979, ch. 38, par. 114—11(g).) However, counsel for defendant did make a specific objection to the admission of his statement during the trial.

■■■ Section 114—11(g) only applies to the suppression of confessions. The acknowledgements made by the defendant here do not amount to an admission of guilt to the perpetration of a crime and therefore are not within the purview of this section. (See *People v. Kennedy* (1978), 66 Ill. App. 3d 267, 383 N.E.2d 713.) However, an even more compelling basis exists for rejecting the State's argument. Proceedings under the Sexually Dangerous Persons Act are civil in nature and "[t]he provisions of the Civil Practice Act * * * apply to all proceedings hereunder except as otherwise provided in this Act." (Ill. Rev. Stat. 1979, ch. 38, par. 105—3.01.) As criminal procedures in proceedings under the Act have been applied only when necessary to insure a defendant due process of law (see *People v. Studdard* (1972), 51 Ill. 2d 190, 281 N.E.2d 678), there is no necessity here to deviate from the clear applicability of the civil procedural rules. We will, therefore, address this issue on the merits.

■■ Although proceedings under the Sexually Dangerous Persons Act have been characterized as civil in nature, there is authority that defendants are still entitled to their constitutional privilege against self-incrimination and the protections afforded by the *Miranda* decision. (*People v. Beksel* (1970), 125 Ill. App. 2d 322, 331, 261 N.E.2d 40; *People v. Potter* (1967), 85 Ill. App. 2d 151, 156, 229 N.E.2d 238.) However, the failure to administer *Miranda* warnings will only render a statement inadmissible when it was the result of custodial interrogation by law enforcement officials. (*People v. Varney* (1978), 58 Ill. App. 3d 70, 76, 373 N.E.2d 1033.) While it has been held that the rule of *Miranda* applies to questioning of a probationer by his probation officer (*State v. Magby* (1976), 113 Ariz. 345, 554 P. 2d 1272, as cited by this court in *People v. Diesing* (1978), 67 Ill. App. 3d 109, 111, 384 N.E.2d 575), the holding in *State v. Magby* evolves from in-custody questioning by the probation officer about a new offense for which the defendant was subsequently convicted. Defendant also cites *People v. Diesing* for the principle that the *Miranda* rule is applicable to all questioning of a probationer by his probation officer. A careful reading of the case, however, discloses that the defendant was an inmate in a work-release center when he was questioned by his work-release

supervisor. This court held that the defendant was in custody at the time of questioning since he was not free to leave the supervisor's office. The focus of concern in *Diesing* was on the custodial nature of that defendant's circumstances.

■■ In the case at bar, it is clear from the record that the meeting among Patterson, Mrs. E., and the defendant was purely an informal arrangement in which no heavy psychological pressure was brought to bear upon the defendant and which the defendant was free to terminate at any time. The meeting was requested by Mrs. E. who was concerned about getting help for the defendant, but had not decided whether to bring criminal charges against him. He was not arrested during or immediately after this meeting, nor is there any indication of any restriction on defendant's freedom. The definition of custodial interrogation as prescribed in *Miranda* is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Miranda v. Arizona* (1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612.) More recently, the Supreme Court in *Oregon v. Mathiason* (1977), 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719, 97 S. Ct. 711, 714, stated:

> "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was *that* sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited."

■■ Whether a custodial setting exists must be determined by an objective evaluation of the circumstances surrounding the question. *People v. Clark* (1980), 84 Ill. App. 3d 637, 405 N.E.2d 1192; *People v. Hentz* (1979), 75 Ill. App. 3d 526, 394 N.E.2d 586.

■■ Since there is no evidence that the defendant was at any time deprived of his freedom of action, his statement was not the result of custodial interrogation and its admission into evidence was not error. The judgment of the trial court is accordingly affirmed.

Affirmed.

NASH and HOPF, JJ., concur.