(No. 31690.—)

THE PEOPLE *ex rel.* Ivan A. Elliott, Attorney General, *et al.,* Appellants, *vs.* WILLIAM G. JUERGENS, County Judge, Appellee.

*Opinion filed November 27, 1950.*

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, JAMES C. MURRAY, and RAYMOND S. SARNOW, all of Chicago, of counsel,) for appellants.

CONN & CLENDENIN, of Sparta, and SCHUWERK & SCHUWERK, of Chester, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

The People of the State of Illinois, on the relation of the Attorney General, filed a petition for a writ of *mandamus* in the circuit court of Randolph County against William G. Juergens, as county judge, appellee, to require him to vacate a certain order entered January 10, 1950, in which said county judge refused to entertain a petition to examine an inmate of the penitentiary, who was claimed to come within the provisions of section 8 of the act of 1933 in relation to the State penitentiary, (Ill. Rev. Stat. 1949, chap. 108, par. 112,) relating to the examination and detention of criminal sexual psychopaths. The defendant answered and claimed said section of the act was unconstitutional, and the circuit judge declined to issue a writ of *mandamus*. The People being a party to said suit, the case comes to this court upon direct appeal.

The facts disclose that Menard penitentiary is located in Randolph County; that there are a number of persons imprisoned in said penitentiary for the crimes of rape, incest, crime against nature, indecent liberties, and attempts to commit said crimes; that under the act above referred to it is made the duty of the Director of Public Safety to cause persons convicted of said crimes to be examined before their discharge, and for that purpose the act above mentioned was enacted, making it the duty of the county judge, upon the application of said Director, to appoint competent physicians to examine said persons, and if they are found to be insane or feeble-minded, or a criminal sexual psychopath, such person at the end of his sentence shall be delivered to the Department of Public Welfare in an appropriate hospital instead of being released from the penitentiary.

Several applications had been made to the said county judge, and after mature deliberation he came to the conclusion that the act in question was unconstitutional, and that he had no power and authority to appoint physicians

to make the examination provided for in the statute. This had occurred several times before the commencement of the present lawsuit. The instant case involves the refusal of the county judge to appoint physicians to make examination of one Herbert Hollowell, who was confined in the penitentiary for one of the above-enumerated offenses.

The petition, addressed to the county judge, requested the court to enter its order for an examination to determine whether the said Hollowell was insane, feeble-minded or a criminal sexual psychopath. The county judge refused to appoint physicians as required by the statute on the ground the act was unconstitutional, and therefore he had no authority to comply with the petition of the Director of Public Welfare. The petition for *mandamus* was then filed to compel the county judge to expunge the order entered by him, and to proceed in the manner required by the act. After the hearing, the circuit judge entered an order denying the writ of *mandamus* because he found that in refusing to make the appointment the county court exercised a judicial action, in that it found that the act was unconstitutional, and that *mandamus* could not properly be issued to control judicial discretion; and for the further reason that he found the question had become moot, because the issuance of the writ of *mandamus* would not operate as an effectual remedy in the cause.

From the foregoing issues it appears that there are two questions before this court: First, is the Criminal Sexual Psychopathic Act constitutional; and, second, if held to be constitutional, was *mandamus* the proper remedy in the present case?

In order to get the proper perspective we should examine the legislation upon the subject of psychopaths. In 1938 the General Assembly enacted an act to provide for the commitment and detention of criminal sexual psychopathic persons. (Ill. Rev. Stat. 1949, chap. 38, par. 820 *et seq.*) Such person was defined as follows: "All persons

suffering from a mental disorder, and not insane or feeble-minded, which mental disorder has existed for a period of not less than one (1) year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, are hereby declared to be criminal sexual psychopathic persons." (Par. 820.) The law also provided that when it appeared to the Attorney General or to the State's Attorney that such a person was a criminal sexual psychopath he could file a petition in court, whereupon it became the duty of such court to appoint two qualified psychiatrists to make examination of such criminal sexual psychopath and file their report, and later a trial by jury was authorized and provision made for his discharge from the Department of Public Safety in case of his recovery. This act applied to persons who were charged with crime, and who had not yet been convicted, and who were placed in the custody of the Department of Public Safety until they recovered, and were tried for the crime with which they were charged.

The act under consideration here was designed for a different purpose. It was intended to cover the cases of those who had been convicted of sex crimes, and who had become feeble-minded, insane, or had become criminal sexual psychopaths, and if such was found to be the case at the termination of such person's imprisonment he was not kept in prison, or in charge of the Department of Public Safety, but, if it was found he was insane, feeble-minded, or a criminal sexual psychopath, he was to be delivered to the Department of Public Welfare until he had recovered. The provisions of this act are quite similar to those relating to the detention of criminal psychopaths, provided for in the Criminal Code.

Briefly, the act in question provides that it is the duty of the Department of Public Safety to cause an examination to be made at suitable intervals to ascertain whether

any convict has developed a condition of insanity, or has given evidence that he is feeble-minded, with continuing criminal tendencies, or has become a criminal sexual psychopath, and in such event to transfer the convict to the psychiatric division of the penitentiary for custody and treatment. The act further provides that before the expiration of the sentence of any convict who has been confined for certain sex crimes, or for attempts to commit the same, the Department of Public Safety shall apply to the county court of the county where the convict is confined to require an examination to be made of such convict to determine whether he is insane or feeble-minded, or is a criminal sexual psychopath; and if such convict is found to be insane, feeeble-minded or a criminal sexual psychopath he shall, upon the expiration of his sentence, be committed to the Department of Public Welfare for confinement in an appropriate State hospital, best suited and equipped to rehabilitate and care for him.

The act then provides how the examination shall be conducted by the physicians, for production of the records of the penitentiary; and provides that any person committed to the Department of Public Welfare, if found to be insane or feeble-minded and confined to the State hospital, when found to have recovered, shall be dealt with in the manner provided for the discharge of persons confined in insane or feeble-minded hospitals. And a person committed to the Department of Public Welfare, after having been found to be a criminal sexual psychopath and confined in the State hospital, if found later to have recovered, shall be dealt with in the manner provided by section 6 of the act first above described. Section 6 of this act (chap. 38, par. 825,) provides that after a person is committed, and an application is made in writing showing that such criminal sexual psychopathic person has recovered, he may be tried before a jury after a time fixed by the court, and if

the verdict of the jury finds that such person has fully recovered he shall be discharged from the custody of the Department of Public Safety. If it finds he has not recovered he shall be recommitted to the Department of Public Safety.

The county judge gave no reasons for his holding that the act in question was unconstitutional, and upon an appeal to this court the Attorney General was compelled to anticipate what grounds would be urged against its validity. In the first instance, we must perceive that there is only a slight difference between the definition of the criminal psychopath contained in the Criminal Code and the one here under consideration. In the first act discussed, a criminally psychopathic person was one who was not insane, and not feeble-minded, but had *criminal propensities to the commission of sex offenses for a year prior* to the filing of the petition. Such persons were called criminal sexual psychopathic persons. In the present act a criminal sexual psychopathic person means any person not insane, or feeble-minded, suffering from a mental disorder, coupled with criminal propensities to the commission of sex crimes.

The only difference in the definitions is that in the first the propensity must exist for a year. This requirement is absent from the second definition, for the very obvious reason that the individual in question is confined in the penitentiary for the very reason that he had committed a sex offense. The acts are so similar in definition and procedure that there should be little difference in their construction. The first act is for the purpose of committing a person to the custody of the Department of Public Safety until he has recovered, so he may be tried as a criminal; the second, the one under consideration, is for the purpose of protecting the public from a person who has already served his time in the penitentiary, but is still a menace because he has become a criminal sexual psychopathic person.

The first act was under review in this court in the case of *People* v. *Sims,* 382 Ill. 472, and we there held it was within the power of the General Assembly to define criminal sexual psychopathic persons, and that said act (chap. 38, pars. 820 to 825, incl.) was valid and constitutional. We further held that, in providing for the commission and detention of criminal sexual psychopathic persons, the act was not discriminatory, even though it only operated where a person was accused of crime; and, in fact, after a thorough review of a number of constitutional objections, the act was held valid.

All we have said in the *Sims case* applies with equal force to the act in question, and we deem it unnecessary to discuss in detail the extent of the police power of the State under which such a statute is fully justified, as it requires no citation of authority to know that the State has not only the power, but the duty, to protect society from persons who are sex criminals, and who have not recovered from their criminal propensities while serving their sentence in the penitentiary. Not only public safety but public morals are involved, which are among the well-settled grounds upon which the police power may be exercised. Were it not for the decision in the *Sims case,* decisions of this court in *People ex rel. Barmore* v. *Robertson,* 302 Ill. 422, and *People ex rel. Baker* v. *Strautz,* 386 Ill. 360, would be ample authority for upholding legislation of this type. As a matter of fact, the lack of due process of law urged by appellee is more fanciful than real. In the first place, the prisoner is in the penitentiary. The Director's duty is to have him examined. He applies to the court for the appointment of doctors. Up to this point he has been deprived of no rights. After a commission has been appointed, and he has been turned over to the Director of Public Welfare and feels that he has been unjustly, unfairly or improperly treated, he is not deprived of remedy, because the statute expressly provides for a trial by jury,

the same as is provided for those persons charged with crime against whom a petition is filed charging him to be a psychopathic criminal person.

The act treats a criminal sexual psychopath as suffering from a type of mental illness. Under the lunacy statute it has been held an insane person may be detained for a limited time, where such restraint is necessary for his protection or the protection of others. (*Crawford* v. *Brown*, 321 Ill. 305; *Maxwell* v. *Maxwell*, 189 Iowa, 7, 177 N.W. 541; *Look* v. *Dean*, 108 Mass. 116.) If a person is a criminal sexual psychopath he is undoubtedly dangerous to others. The law provides he shall be examined by physicians while he is still in confinement in the penitentiary, and it is after his term of imprisonment has expired that he is delivered to the Department of Public Welfare. He has no ground to complain of the examination during the time he is in prison, and after the term of his imprisonment ends he is entitled to demand a hearing before a jury on the question of whether he is actually a criminal sexual psychopath, as found by the commission. This statute does not, as we interpret it, permit a prisoner, after his discharge, to be seized and detained by the process indicated above, but it must take place before the term has ended, so regardless of all other questions there can be no complaint of the examination of the prisoner, as required by the act. After he is delivered to the Department of Public Welfare he is afforded an ample remedy to obtain his liberty when he has recovered, or, if not a criminal sexual psychopath, at the time of his detention. We believe this affords him due process of law.

We entertain no doubt whatever as to the soundness and wisdom of this legislation, and we think the county court was in error in holding that the act in question was unconstitutional.

That presents a second point, and that is, whether the writ of *mandamus* should have been issued by the circuit

court. The county court is a court of general jurisdiction within the provisions of the constitution and the statutes defining its powers and jurisdiction. It has power to pass upon the matters coming before it. It was designated as the court before which application was to be made to appoint physicians to examine this particular inmate of the penitentiary. Before this application had been made other applications had been made, and, after a thorough study of the law and before the present case was filed, the court held that the law in question was unconstitutional, and it was within its power in a case properly before it to so decide. While it was in error, as we find, in its conclusion, still it had the power to decide. If the law was unconstitutional it had no effect whatever. It was the same as though it never existed.

In *People ex rel. Barrett* v. *Sbarbaro,* 386 Ill. 581, concerning invalid law, we said: "An invalid law is no law at all. It confers no rights and imposes no duties. [*Citation.*]" Official action of a judge is judicial where it is the result of judgment or discretion. When the officer has the authority to hear and determine the rights of persons or property, or the propriety of doing an act, he is vested with judicial power, and necessarily his decision must be a judicial act. (*People* v. *Bartels,* 138 Ill. 322; *In re McGarry,* 380 Ill. 359; *Union Pacific Railroad Co.* v. *United States,* 99 U. S. 700, 25 L. ed., 1859.) It is within the province and power of the court to decide whether a law requires it to act, and in so deciding it undoubtedly exercises a judicial act. If any other statute had come before the court, its decision in holding the same unconstitutional would have been a judicial act. So, likewise, in determining that it had no power to appoint physicians, as provided by the statute in question, because in its opinion the act was unconstitutional, it exercised judicial power. And, although the court exercised it erroneously, still it was the exercise of judicial power.

The law is well settled that a writ of *mandamus* may not issue to control judicial discretion or to review the actions of a tribunal in any manner involving the decision of such question. (*People ex rel. Briggs & Turivas* v. *Cook,* 311 Ill. 429; *People ex rel. Wonogas* v. *Holmes,* 312 Ill. 284; *People ex rel. Brignall* v. *Lewe,* 383 Ill. 549.) There can be no question but what the appellee in good faith, prior to the particular case about which the Attorney General complains, held and decided the law involved was invalid and unconstitutional. Having so held, as a judicial officer, the proper remedy was not *mandamus,* but by appeal from his erroneous action. The circuit judge trying the present case had no occasion to pass upon the validity of the law. He properly determined he had no power to issue a writ of *mandamus* to compel the county judge to undo a judicial act involving judicial discretion.

Other questions are raised, which are unnecessary to discuss because the foregoing disposes of the merits of the case. The judgment of the circuit court of Randolph County is affirmed.

*Judgment affirmed.*