THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* ROBERT PEMBROCK, Respondent-Appellant.

(No. 59415;

First District (5th Division)—November 8, 1974.

Robert H. Smith, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Barry Rand Elden, both Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

This appeal arises from a judgment finding defendant to be a "sexually dangerous person" and appointing the Director of Corrections his guardian. Defendant contends that (1) the standard of proof for commitment under the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1971, ch. 38, par. 105—1 et seq.) must be proof beyond a reasonable doubt, not a preponderance of the evidence; (2) substantial differences exist between commitment proceedings brought under the Sexually Dangerous Persons Act and those brought under the Mental Health Code (Ill. Rev. Stat. 1971, ch. 91½, par. 1—1 et seq.), and this constitutes a violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution; (3) he should have been afforded certain procedural rights available to defendants in criminal prosecutions; (4) the Sexually Dangerous Persons Act is constitutionally void for vagueness and overbreadth; and (5) he was denied certain statutory and constitutional rights due to the fact that his trial counsel stipulated to the admission into evidence of psychiatric reports.

There is no dispute as to the facts. On September 19, 1972, defendant was arrested and charged with the crime of indecent liberties with a child (Ill. Rev. Stat. 1971, ch. 38, par. 11—4(a)(2)). Subsequently, on October 6, 1972, the State filed a petition pursuant to section 1.01 et seq. of the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1971, ch. 38, par. 105—1.01 et seq.) requesting that the court declare defendant to be a sexually dangerous person.[1] Pursuant to section 4 of the Act (Ill. Rev. Stat. 1971, ch. 38. par. 105—4), the court ordered two psychiatrists of the "Psychiatric Institute of the Municipal Court of Chicago" to examine

---

[1] Section 1.01 (Ill. Rev. Stat. 1971, ch. 38, par. 105—1.01) provides:

"All persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children, are hereby declared sexually dangerous persons."

defendant and file reports on their findings.[2] On November 6, 1972, a hearing was held on the State's petition at which defendant, through court appointed counsel, waived his right to a jury (see Ill. Rev. Stat. 1971, ch. 38, par. 105—5) and stipulated into evidence the reports of the psychiatrists. Both reports included summaries detailing the psychiatrists' interviews with defendant, and both reports recommended that he be declared a sexually dangerous person. The court so found and, pursuant to section 8 of the Act (Ill. Rev. Stat. 1971, ch. 38, par. 105—8), appointed the Director of Corrections to be defendant's guardian. Defendant is currently confined in the State Penitentiary at Menard.[3]

OPINION

The State argues that at defendant's commitment hearing it was required to and did prove its case by a preponderance of the evidence as required in civil cases. Defendant contends that he was denied due process of law in that his involuntary commitment was ordered without his having been proved a sexually dangerous person beyond a reasonable doubt.

The State urges that we must reject defendant's contention since proceedings under the Sexually Dangerous Persons Act are characterized as civil in nature (Ill. Rev. Stat. 1971, ch. 38, par. 105—3.01). However, it asserts that in the interests of "consistency" a standard of proof of "clear and convincing evidence" should be applied to these proceedings as it is in those brought under the Mental Health Code. See *People v. Sansone*, 18 Ill.App.3d 315, 309 N.E.2d 733.

---

[2] Section 4 (Ill. Rev. Stat. 1971, ch. 38, par. 105—4) provides:
"After the filing of the petition, the court shall appoint two qualified psychiatrists to make a personal examination of such alleged sexually dangerous person, to ascertain whether such person is sexually dangerous, and the psychiatrists shall file with the court a report in writing of the result of their examination, a copy of which shall be delivered to the respondent."

[3] Section 8 (Ill. Rev. Stat. 1971, ch. 38, par. 105—8) provides:
"If the respondent is found to be a sexually dangerous person then the court shall appoint the Director of Corrections guardian of the person found to be sexually dangerous and such person shall stand committed to the custody of such guardian. The Director of Corrections as guardian shall keep safely the person so committed until the person has recovered and is released as hereinafter provided. The Director of Corrections as guardian shall provide care and treatment for the person committed to him designed to effect recovery. The Director may place that ward in any facility in the Department of Corrections or portion thereof set aside for the care and treatment of sexually dangerous persons. The Department of Corrections may also request another state Department or Agency to examine such patient and upon such request, such Department or Agency shall make such examination and the Department of Corrections may, with the consent of the chief executive officer of such other Department or Agency, thereupon place such patient in the care and treatment of such other Department or Agency."

■■ The United States Supreme Court in *In re Gault*, 378 U.S. 1, and in *In re Winship*, 397 U.S. 358, held that the distinction between "criminal" and "civil" proceedings provided an unpersuasive excuse for affording lesser safeguards to juveniles in delinquency proceedings than are given adults charged with violations of the criminal law. The requirements of due process are determined by the nature of the interests which are affected by the proceedings and not by the descriptive label applied to them. See *Lessard v. Schmidt* (E.D. Wis. 1972), 349 F. Supp. 1078; *People v. Capoldi*, 37 Ill.2d 11, 225 N.E.2d 634.

*Winship* focused specifically upon the issue of the standard of proof required where an individual stands in jeopardy of being placed in institutional confinement. The Supreme Court explicitly stated for the first time that the reasonable doubt standard is constitutionally required in criminal cases and went on to hold that since a juvenile in a delinquency proceeding, like a criminal defendant, is threatened with loss of liberty and "stigmatization," this standard applies in such situations as well even though the proceedings are characterized as "civil." The court further found that the reasonable doubt standard reduces the risk of erroneous conviction, engenders respect and confidence in the law and helps alleviate the severe disadvantages of the defendant in his confrontations with the State and that, moreover, the adoption of this standard would not destroy the "beneficial aspects of the juvenile process." *Winship* at 366; see *Developments in the Law—Civil Commitment of the Mentally Ill*, 87 Harv. L. Rev. 1190, 1295.

Relying heavily on *Winship*, the Federal District Court in *Stachulak v. Coughlin* (N.D. Ill. 1973), 369 F. Supp. 628, has recently held that the reasonable doubt standard is required in proceedings brought pursuant to the Sexually Dangerous Persons Act. Although we are not bound by the decision of Federal district courts (*People v. Stansberry*, 47 Ill.2d 541, 268 N.E.2d 431) we are convinced of the soundness of the *Stachulak* holding. There the plaintiff, committed under the Sexually Dangerous Persons Act, brought a habeas corpus action. The court found his case to be indistinguishable from *Winship*. It further noted that "[i]n the present case, as in *Winship*, the plaintiff had at stake an 'interest of immense importance, both because of the possibility that he may lose his liberty * * * and because * * * he would be stigmatized by the conviction' 397 U.S. at 363." In the case at bar defendant has suffered a "loss of liberty"; he has been ordered confined to a facility of the Department of Corrections. He was found to be a sexually dangerous person, a designation which "certainly carries a potential for stigma equal to the label delinquent." (*Stachulak* at 630.) Moreover, as was noted by the district court, to allow a lesser burden of proof in a sexually-dangerous-

persons proceeding than if the original criminal charge had proceeded to completion creates an incentive for the prosecution to file a sexually dangerous persons petition in cases where it feels it does not have sufficient evidence to convict for the original offense charged. (*Stachulak* at 631; *cf.* Burick, *An Analysis of the Illinois Sexually Dangerous Persons Act*, 59 J. Crim. L.C. & P.S. 254 (1968).) We, therefore, hold that in proceedings brought pursuant to the act in question, the State must prove its case beyond a reasonable doubt. Consequently we reverse the judgment entered below and remand the cause for a determination as to whether under this standard defendant is a sexually dangerous person.

■■ Although we have held that a standard of proof of beyond a reasonable doubt must be used in sexually dangerous persons proceedings, we do not believe that other elements of the criminal process, such as admonitions regarding a right to a jury trial, a right to appeal and the consequences of a guilty plea, are also constitutionally required as has been contended by defendant. We have noted above that the requirements of due process are not static but may vary depending upon the nature of the interests involved. While both the civil proceedings in question and criminal prosecutions may result in a loss of liberty, substantial differences exist between them. Foremost among these are that in a commitment under the Act there is no inference of moral blameworthiness since a finding of sexual dangerousness indicates that a defendant's inability to conform to the dictates of the law is the product of a mental illness and, secondly, commitment under the Act, unlike criminal incarceration, is not intended as punishment.[4] Thus our supreme court has specifically rejected defendant's arguments regarding jury trial admonitions (*People v. Studdard*, 51 Ill.2d 190, 281 N.E.2d 678) and right to appeal (*Capoldi*). Moreover, since commitment under the Act does not constitute a criminal conviction, Supreme Court Rule 402 (Ill. Rev. Stat. 1971, ch. 110A, par. 402) does not apply.

Defendant next argues that we must find the Sexually Dangerous Persons Act void for vagueness and overbreadth.

■■ The courts of this State have consistently upheld the constitutionality of this statute. (*People v. Sims*, 382 Ill. 472, 47 N.E.2d 703; *People ex rel. Elliot v. Juergens*, 407 Ill. 391, 95 N.E.2d 602; *People v. Ross*,

---

[4] "Those persons who are adjudged sexually dangerous under the Act are committed to the care of the Director of Corrections, but this does not imply that they are to be treated as criminal prisoners. The Act states that the Director of Corrections 'shall provide care and treatment for the person committed to him designed to effect recovery,' and that such persons shall be held 'in any facility in the Department of Corrections or portion thereof *set aside for the care and treatment* of sexually dangerous persons.' (Emphasis supplied.) Ill. Rev. Stat. 1969, ch. 38, par. 105—8." *People v. Shiro*, 52 Ill.2d 279, 283, 287 N.E.2d 708.

344 Ill.App. 407, 101 N.E.2d 112.) Although defendant claims that advances in psychiatry coupled with recent decisions by the Supreme Court (see, *e.g., Jackson v. Indiana*, 406 U.S. 715) compel a reexamination of the Act, we note that in *Stachulak* the court rejected this precise argument. We, therefore, hold that the Act is neither too vague nor too broad and imprecise to pass constitutional muster.

■■ Defendant also contends that individuals subject to involuntary commitment under the Sexually Dangerous Persons Act are not offered the same procedural rights as those committed under the Mental Health Code (Ill. Rev. Stat. 1971, ch. 91½, par. 1—1 *et seq.*) and that this constitutes a violation of the equal protection clause of the Fourteenth Amendment. We find, however, that the two methods of commitment are substantially similar. For example, it is undisputed that both the Act and the Mental Health Code allow trial by jury and grant the right to appeal. Both provide for commitment in specially designated facilities. (Compare Ill. Rev. Stat. 1971, ch. 38, par. 105—8, with Ill. Rev. Stat. 1971, ch. 91½, par. 1—5.) In addition, both set forth clear standards of review and release. Although defendant has argued that a constitutionally impermissible difference between the two procedures exists because the Mental Health Code provides for periodic review of an individual's need for continued commitment (see Ill. Rev. Stat. 1971, ch. 91½, par. 10—2) while under the Act the burden of seeking review is placed upon the person committed, we feel that this difference is not so substantial as to constitute a violation of the equal protection clause.

■■ Finally, defendant contends that due to the fact that counsel below stipulated to the admission of the psychiatric reports, he was denied his right to confront witnesses against him. In addition, he argues that the State failed to prove the qualifications of the examining psychiatrists as is required by the Act. (See Ill. Rev. Stat. 1971, ch. 38, par. 105—4.01.)[5] Defendant relies primarily on *People v. Dykema*, 89 Ill.App.2d 409, 232 N.E.2d 471, where a finding of sexual dangerousness was reversed due to the stipulation into evidence by defense counsel of psychiatric reports. In reaching that decision the appellate court noted that these reports were filed by two physicians who were substituted for the court appointed psychiatrists on oral motion on the day of the commitment hearing. Moreover, the record was silent as to their qualifications. We find the instant case to be distinguishable. The trial court ordered two psychiatrists from the "Psychiatric Institute of the Municipal Court of

---

[5] Section 4.01 of the Act (Ill. Rev. Stat. 1971, ch. 38, par. 105—4.01) defines a "qualified psychiatrist" as "a reputable physician licensed in Illinois to practice medicine in all its branches, who has specialized in the diagnosis and treatment of mental and nervous disorders for a period of not less than 5 years."

Chicago" to examine defendant. They took over 3 weeks in preparing their reports. On the day of the hearing defense counsel reiterated his agreement to a stipulation to the admission of the reports into evidence. The following colloquy then ensued:

"The Court: Okay, so we have two qualified physiciatrists [*sic*], Dr. Kelleher and Dr. Stern?

Mr. Gecan [the Public Defender]: Right, Judge.

The Court: Is the defendant waiving his right to trial by jury on this charge?

Mr. Gecan: Yes, Judge.

The Court: Okay, then we are ready. Is there any evidence the defendant would tender now following the finding of the report of both Dr. Kelleher and Dr. Stern.

Mr. Gecan: No, Judge. We would stand on the doctors' report. We would stipulate to their admission in evidence."

Clearly, defendant's stipulations in the instant case relieved the State of any further proof regard'ng the psychiatrists' qualifications. In addition, on the basis of the record before us we believe that the requirements of the statute and of due process were met by these stipulations.

For the foregoing reasons the judgment entered below is reversed and the cause remanded for a hearing at which the standard of proof shall be beyond a reasonable doubt.

Reversed and remanded.

SULLIVAN, P. J., and LORENZ, J., concur.