THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GORDON GLENN OLIVER, Defendant-Appellant.

(No. 12180;

Fourth District—October 16, 1975.

TRAPP, P. J., dissenting.

John F. McNichols and Bruce L. Herr, both of State Appellate Defender's Office, of Springfield, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Thomas L. Knight, Assistant State's Attorney, and William Paul, Law Student, of counsel), for the People.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

After a bench trial, defendant Gordon Glenn Oliver was found to be a sexually dangerous person and was committed to the custody of the Department of Corrections of the State of Illinois. He appeals from the judgment of the trial court and the commitment order contending: (1) That the Sexually Dangerous Person Act deprived him of the equal protection of the laws; (2) that said act, as applied, deprived him of due process of law; (3) that the petition which originated these proceedings was not sufficient to support a commitment order under the Act; (4) that the psychiatrists' reports and testimony were insufficient to establish a prima facie case for the State; (5) that one of the physicians appointed by the court to examine defendant was not a qualified psychiatrist as defined in the Sexually Dangerous Persons Act; (6) that the State failed to establish a prima facie case by reason of the fact that only one report was filed by court-appointed psychiatrists; and (7) that the court erred in ruling in favor of the State by reason of the fact that the preponderance of the evidence was in favor of defendant.

■■ It is our opinion that the petition filed in this cause is adequate to support a commitment under the Act. Section 3 of the Sexually Dangerous Persons Act provides that the petition filed under the provisions of the Act shall set forth "facts tending to show that the person named is a sexually dangerous person." (Ill. Rev. Stat. 1971, ch. 38, par. 105—3.) The defendant was tried on an amended petition alleging that defendant was then charged with the crime of attempted rape and the crime of aggravated battery, that he was suffering from a mental disorder which had existed for not less than one year, and that he then had criminal propensities to the commission of sex offenses and sexual assault, which propensities had been demonstrated by defendant during several instances of misconduct. Although defendant concedes that in criminal cases charges phrased in the language creating the offense are normally sufficient, he argues that the statutory language of the Sexually Dangerous Persons Act is too general to permit the filing of a petition reciting the language of the statute. We do not agree. Defendant was specifically informed of all allegations required by said act, and it cannot be said that he was not reasonably informed of the nature of the claim he is called upon to meet as the court held was required in *People v. McDonald,* 44 Ill.App.2d 348, 194 N.E.2d 541, cited by defendant in his brief.

██ Defendant further contends that the psychiatrists' reports and testimony were not sufficient to establish a prima facie case. We find no merit in this contention. Defendant was examined by Dr. Harry Little and Dr. Lawrence Richards, both of whom filed a report on defendant's mental condition and both of whom testified on behalf of the State. Dr. Little testified that the defendant possessed a feeling of racial oppression and would desire a closeness with white females, that he would probably approach and possibly frighten them, that this tendency would probably continue absent treatment of some kind, and that defendant's mental condition was probably of two years' duration. Dr. Little testified on cross-examination that although defendant's threatening sexual behavior was likely to continue, he did not think defendant would carry the threat to actual completion. Dr. Richards testified that in his examination of defendant, he exhibited varying amounts of personality disorder and sexual deviancy; and although he testified he was not sure whether defendant had a mental disorder when he compiled his report, he stated that if defendant were, in fact, guilty of the offenses for which he had been charged and convicted in the past and guilty of the offense for which he was then charged, then the defendant could be considered sexually dangerous. Considering by itself the testimony of the two doctors called to testify by the State, one must conclude that a prima facie case was established by the reports and testimony of the doctors.

██ The question as to whether Dr. Lawrence Richards was a qualified psychiatrist as defined in section 4.01 of the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1971, ch. 38, par. 105—4.01) is also raised by defendant in his appeal. Dr. Richards is shown by the record to have treated and diagnosed mental disorders for seven and one-half years and to have spent three of those years in residency. Defendant contends that excluding his residence period, Dr. Richards' specialized experience totals only four and one-half years of practice and not the five years required by the Sexually Dangerous Persons Act. We can find no cause for disregarding Dr. Richards' three years' residency in the treatment and diagnosis of mental disorders in computing the five years referred to in the statute as determinative of whether or not a physician is a "qualified psychiatrist" as defined in the Act.

We find defendant's contention that only one report was filed by a court-appointed psychiatrist to be without foundation. The supplemental record indicates a docket entry by the presiding judge appointing Dr. Lawrence Richards to make a personal examination of the defendant and to file reports in writing of the results of their examinations which reports were filed.

██ Further, we find that the preponderance of the evidence was not

in defendant's fav... as contended by him. The testimony of the three psychiatrists, together with evidence of defendant's convictions of attempted rape and burglary with intent to commit a deviate sexual assault in Cook County on a plea of guilty and the testimony concerning threatening sexual advances at knifepoint in Champaign, Illinois, on two separate occasions, certainly create a preponderance of evidence in favor of the State and not the defendant.

● 5   Finally, the remaining issues raised by defendant's appeal present similar questions, in that they raise the constitutionality of the Sexually Dangerous Persons Act as enacted by the legislature and its constitutionality as applied in this case. Defendant first asserts that psychiatric reports were introduced in violation of his privilege against self-incrimination and that there is no showing in the record that he knowingly waived such right. The privilege was held to be applicable to the Sexually Dangerous Persons Act in *People v. Potter*, 85 Ill.App.2d 151, 228 N.E.2d 238; however, there is nothing in the record to indicate that the defendant asserted this privilege during his examination by the doctors, when the psychiatric testimony was presented or during the remainder of the trial or in his post-trial motion. In *People v. Bruckman*, 33 Ill.2d 150, 210 N.E.2d 537, the court stated that the privilege against self-incrimination can be waived as any other constitutional right and is waived unless asserted at the trial. The court there stated that testimony was received by psychiatrists at the trial without objection and that there was nothing in the record to indicate that the defendant asserted his privilege during the examination by the psychiatrist.

Defendant acknowledges that the statute in question and its predecessors have generally withstood constitutional challenges in the past, citing *People v. Sims*, 382 Ill. 472, 47 N.E.2d 703; *People v. Ross*, 344 Ill.App. 407, 101 N.E.2d 112; *People v. Studdard*, 51 Ill.2d 190, 281 N.E.2d 678; and *Minnesota ex rel. Pearson v. Probate Court* (1940), 309 U.S. 270, 84 L.Ed. 744, 60 S.Ct. 523, 126 A.L.R. 530. Defendant would distinguish the *Pearson* decision by pointing out that the United States Supreme Court quoted and accepted the State court's interpretation that the Act was intended to include those persons who by a habitual course of misconduct in sexual matters have evidenced an utter lack of power to control their sexual impulses, while the Illinois Sexually Dangerous Persons Act is applicable to persons with a propensity towards acts of sexual assault. Further, the Illinois act requires commitment of sexually dangerous persons to the Illinois Department of Corrections while the Minnesota act applied equally to insane persons and those adjudged to have a psychotic personality.

Defendant contends that although proceedings under the Sexually

Dangerous Persons Act are expressly specified to be civil in nature, they have long been recognized to bear a strong resemblance to criminal prosecutions. *People v. Bruckman*; *People v. English*, 31 Ill.2d 301, 201 N.E.2d 455.

He further contends that recent decisions have held that constitutional safeguards may not be voided by the simple act of branding an act to be civil in nature, citing *In re Gault* (1967), 387 U.S. 1, 18 L.Ed.2d 527, 87 S.Ct. 1428, and *In re Winship* (1970), 397 U.S. 358, 25 L.Ed.2d 368, 90 S.Ct. 1068, both dealing with juvenile delinquency proceedings, and *Specht v. Patterson* (1967), 386 U.S. 605, 18 L.Ed.2d 326, 87 S.Ct. 1209, dealing with a sexual-offender statute, which held: "These commitment proceedings whether denominated civil or criminal are subject both to the Equal Protection Clause of the Fourteenth Amendment * * *, and to the Due Process Clause. * * *" 386 U.S. 605, 608, 18 L.Ed.2d 326, 329.

Finally, defendant relies on the decision in *People v. Burnick* (1975), 14 Cal. 3d 306, 535 P.2d 352, 121 Cal. Rptr. 488, holding that in a mentally disordered sex offender proceedings under the California Welfare and Institutions Code, the standard of proof beyond a reasonable doubt *is* required by the California constitution and the fourteenth amendment to the United States Constitution.

We do not agree with the defendant that the authorities cited by him require the reversal of the judgment of the trial court and the commitment order. The statute upon which this appeal is based is expressly stated to be civil in nature. While we realize that simply because such a recital is contained in the Act is not controlling, it is our opinion that the proceedings are, in fact, civil in nature. The object of the proceedings is to determine the status of defendant, not to punish him for his actions. The defendant is given the right to jury trial and the right to counsel if he so desires. This defendant does not complain that he was not afforded the constitutional safeguards in the two criminal charges he previously faced in Cook County. To the contrary, he pleaded guilty to attempted rape on March 21, 1967, and on November 9, 1971, he entered a plea of guilty to burglary with intent to commit a deviate sexual assault.

It was alleged in the amended petition that defendant was then suffering from a mental disorder which had existed for a period of not less than one year. The medical evidence was uncontroverted and constituted proof of such allegation. The petition further alleged that defendant's propensities to the commission of sex offenses and sexual assault had been demonstrated by him during several instances of misconduct. The evidence presented at the trial conclusively established this allegation also.

In *Specht v. Patterson*, the United States Supreme Court specified that the procedural rights which must be afforded a defendant under a sexual offender statute included the right to demand adequate findings by the court, the right to a hearing, the right to counsel and the right to present evidence and to cross-examine witnesses. While holding that such proceedings were subject to both the equal protection clause of the fourteenth amendment and the due process clause, the court did not indicate which standard of proof should be applied.

The minority opinion in *Burnick*, cited by defendant as additional authority, considered the problem raised by the constitutional aspects of defendant's appeal. It was there stated that unlike criminal or juvenile proceedings wherein the factual issue of prior guilt or innocence must be resolved, the issue before the court in mentally disordered sex offender proceedings is "essentially predictive in nature, aimed at forecasting whether a person who has already been convicted of one criminal offense is likely to be dangerous to others by reason of a predisposition to commit sexual offenses." (14 Cal. 3d 306, ——, 535 P.2d 352, 370, 121 Cal. Rptr. 488, 506.) The dissenting opinion went on to state that in performing this predictive function, the "court and jury must necessarily be guided in large by psychiatric opinion which, by its very nature, is seldom conclusive beyond all reasonable doubt" (14 Cal. 3d 306, ——, 535 P.2d 352, 370, 121 Cal. Rptr. 488, 506) and concluded that the State's burden of proof should correspond realistically with the degree of assurance with which reputable physicians express themselves.

It is our opinion, therefore, that the burden of proof required in proceedings under the Illinois Sexually Dangerous Persons Act is proof by a preponderance of the evidence and not proof beyond a reasonable doubt.

The author of the dissenting opinion in *Burnick*, in commenting on *Burnick* and a companion case, observed that the majority had suggested that the California system fails to provide adequate care and treatment for the mentally disordered sex offender and stated: "If true (and the record in these cases is wholly insufficient on the point), the proper solution is, I suggest, to establish and enforce safeguards which assure that such treatment is forthcoming, and not to erect procedural barriers (such as impractical proof standards) which deprive both the public and the defendant himself of the benefits of the MDSO [mentally disordered sex offender] program." (14 Cal. 3d 306, ——, 535 P.2d 352, 372, 121 Cal. Rptr. 488, 508-09.) A similar attitude was expressed by Justice Harlan in his concurring opinion in *In re Winship*, when he stated that the differences between criminal prosecutions and juvenile delinquency pro-

ceedings are not sufficient to support a difference in the burden of proof, but, he stated: "It is of great importance, in my view, that procedural strictures not be constitutionally imposed that jeopardize 'the essential elements of the State's purpose' * * *." 397 U.S. 358, 375, 25 L.Ed. 2d 368, 381, 90 S.Ct. 1068.

We agree. The defendant in this cause and the public stand in a position to be benefited by treatment afforded under the Sexually Dangerous Persons Act, and procedural barriers or strictures should not be imposed which would limit those benefits.

By reason of the foregoing, the judgment of the trial court and its commitment order are affirmed.

Judgment affirmed.

SMITH, J., concurs.

Mr. PRESIDING JUSTICE TRAPP, dissenting:

I would reverse and remand for the reasons stated in *People v. Pembrock*, 23 Ill.App.3d 991, 320 N.E.2d 470, *appeal allowed*, 58 Ill.2d 595, which holds that an individual must be proven to be a sexually dangerous person beyond a reasonable doubt.

The underlying offenses for these proceedings were charges of rape and aggravated battery. To convict of either would require proof beyond a reasonable doubt. Here one psychiatric opinion is conditioned upon a determination that defendant is in fact guilty of attempted rape.

In comparative terms, if defendant's criminal responsibility in the context of insanity[1] was an issue, the prosecution would have to prove such responsibility beyond a reasonable doubt in order to confine him. *People v. Gold*, 38 Ill.2d 510, 222 N.E.2d 702, *cert. denied*, 392 U.S. 940, 20 L.Ed.2d 1400, 88 S.Ct. 2317.

In *Specht v. Patterson*, 386 U.S. 605, 18 L.Ed.2d 326, 87 S.Ct. 1209, the court examined a Colorado statute which provided that upon conviction of a sex offense an individual might be sentenced to an indefinite term of one day to life under provisions of a "Sex Offenders Act." The issue examined was due process in the context of notice and hearing. Noting that the sentence was not based upon a specified crime, the court said:

> "These commitment proceedings whether denominated civil or criminal are subject both to the Equal Protection Clause * * * and to the Due Process Clause." 386 U.S. 605, 608, 18 L.Ed.2d 326, 329.

---

[1] Ill. Rev. Stat. 1973, ch. 38, par. 6—2.

*In re Winship*, 397 U.S. 358, 25 L.Ed.2d 368, 90 S.Ct. 1068, the court discussed the degree of proof required to establish juvenile delinquency. In holding that the constitutional essential of due process required proof beyond a reasonable doubt, the court noted that despite a "civil label" to the proceedings, defendant was subject to a loss of liberty comparable in seriousness to a felony conviction. Here it is potentially greater. Attempted rape is classified as a Class 2 felony[2] with a minimum sentence of one year and a maximum of 20 years.[3] Aggravated battery is specified as a Class 3 felony[4] with a minimum sentence of one year and a maximum of 10 years.[5] Upon such convictions defendant would be eligible for parole, as well as the benefits for good time served. But in these proceedings, defendant's confinement is potentially indefinite and in order to obtain release he must prove his recovery by a preponderance of the evidence. (*People v. Beksel*, 10 Ill.App.3d 406, 294 N.E.2d 111.) The fact that upon such discharge, the pending charges will be dismissed does not eliminate the constitutional issue.[6]

We have considered the opinion in *People v. Harter*, 86 Ill.App.2d 461, 230 N.E.2d 15. There the issue presented was whether the judgment was supported by a preponderance of the evidence. The court was not asked to determine the degree or level of proof required as a constitutional issue.

As noted in *Winship* (397 U.S. at 367, 25 L.Ed.2d at 377), the observance of a standard of proof beyond a reasonable doubt will not compel the State to abandon or displace any of the substantive benefits in the concept of treatment and rehabilitation of sex offenders.

---

[2] Ill. Rev. Stat. 1973, ch. 38, pars. 8—4(c)(2), 11—1(c).

[3] Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(3).

[4] Ill. Rev. Stat. 1973, ch. 38, par. 12—4(d).

[5] Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(4).

[6] Ill. Rev. Stat. 1973, ch. 38, par. 105—9.