THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE BURKHART, Defendant-Appellant.

Fourth District   No. 4—82—0738

Opinion filed July 26, 1983.

TRAPP, J., dissenting.

Daniel D. Yuhas and James G. Woodward, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and John M. Wood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On April 30, 1979, a petition was filed in the circuit court of McLean County alleging defendant, George Burkhart, to be a sexually dangerous person within the meaning of section 1.01 of the Sexually Dangerous Persons Act. This section, at all times pertinent, provided:

"As used in this Act:

All persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children, are hereby declared sexually dangerous persons." (Ill. Rev. Stat. 1977, ch. 38, par. 105—1.01.)

The petition was filed in a criminal proceeding where defendant (1) had been charged in a six-count indictment, and (2) eventually entered a plea of guilty to one of the counts.

Defendant had entered his plea of guilty pursuant to an agreement with the State that if he would enter the plea and admit the allegations of the petition, he would (1) receive a sentence of six years' imprisonment, and (2) if found to be sexually dangerous by court-appointed psychiatrists, be committed as sexually dangerous. The parties agreed that incarcerations imposed would run concurrently. On November 2, 1979, the court imposed the six-year sentence and pronounced, in open court, an order declaring defendant to be sexually dangerous and committing him as such. The pronouncement required the submission of a written judgment which was signed and placed on file on November 5, 1979. The remaining counts of the indictment were nol prossed on November 2, 1979, apparently after the pronouncement of the commitment order.

On July 1, 1982, defendant filed in the trial court the instant application maintaining that he had recovered (Ill. Rev. Stat. 1981, ch. 38, par. 105—9). After an evidentiary hearing on the application, the trial court entered an order on October 12, 1982, denying all relief. Defendant appeals, contending (1) the order finding him sexually dan-

gerous was void, and (2) the denial of his application was contrary to the manifest weight of the evidence. His contention that his commitment was void is based on theories raised for the first time on appeal and it attacks a final order from which no appeal was taken. However, a void order can be attacked at any time. *Filosa v. Pecora* (1974), 18 Ill. App. 3d 123, 309 N.E.2d 356.

We affirm the decision of the trial court.

Defendant's contention that the original commitment was void is based on the concurrent validity of three theories, each of which presents complicated questions. These theories are that: (1) The Sexuality Dangerous Persons Act prohibits adjudicating a defendant to be sexually dangerous based upon the same conduct for which he has been convicted in a concurrent criminal proceeding; (2) that procedure was followed in this case; and (3) the statutory violation deprived the court of subject matter jurisdiction to rule on the petition.

Section 3 of the Act provides for the initiation of proceedings. It states that the prosecution may file a petition in the circuit court alleging that a person is sexually dangerous when it appears to the prosecutor that the person is sexually dangerous and that person "is charged with a criminal offense." (Ill. Rev. Stat. 1977, ch. 38, par. 105—3.) Section 9 of the Act concerns proceedings for discharge of a person previously adjudged to be sexually dangerous. It states, in part, that: "Upon an order of discharge every outstanding [criminal charge], the basis of which was the reason for the present detention, shall be quashed." (Ill. Rev. Stat. 1977, ch. 38, par. 105—9.) Even though the Act has no provision expressly requiring the existence of pending charges at the time of the adjudication of sexual dangerousness, defendant asserts that both the purpose of the statute and precedent require such a construction be placed upon the statute. For reasons subsequently stated, we need not decide this question.

The supreme court case relied on by defendant is *People v. Redlich* (1949), 402 Ill. 270, 83 N.E.2d 736. There, a defendant was charged with a sexual offense. The prosecutor filed a petition under a statute similar to the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1947, ch. 38, par. 820 *et seq.*) recommending commitment of the defendant. The defendant refused to comply with an order directing him to submit to examination by psychiatrists and was held to be in direct contempt of court and sentenced to jail until he complied. The court then tried the defendant on the criminal charge and defendant was convicted and sentenced. He then appealed the contempt conviction. The supreme court reversed the conviction holding that: (1) The purpose of the statute, like similar legislation, was to determine

whether the accused had a mental disorder such that he should not be tried for the criminal charge until he had recovered from the mental disorder; (2) the contempt proceeding was civil in nature and was for the purpose of compelling the defendant to submit to the examination; and (3) as the defendant had been convicted, the trial court could no longer stay the prosecution. The court reasoned that as there would be no purpose in determining the defendant's mental condition after he had been convicted, the court would have no jurisdiction to do so and any order on that issue would be void.

As the *Redlich* court indicated, the focus of the legislation involved there was whether the accused had a mental condition preventing trial until recovery. That legislation stated that upon determination of recovery, the person should be committed to the sheriff of the county where the criminal charges were made so that trial of those charges could proceed. (Ill. Rev. Stat. 1947, ch. 38, par. 825.) Section 9 of the Sexually Dangerous Persons Act states that under similar circumstances those charges which were the basis of the commitment are to be quashed. The purpose of the legislation is no longer to determine whether the defendant can stand trial, but to give the defendant an opportunity to receive help for his propensity to commit sexual offenses and to protect the public from the defendant until release is deemed desirable.

In *People v. Patch* (1972), 9 Ill. App. 3d 134, 293 N.E.2d 661, a person on conditional release under section 9 of the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1965, ch. 38, par. 105—9) was convicted of a deviate sexual assault committed shortly after the conditional release. Subsequently, the conditional release was revoked because of the same conduct. On appeal from the order of revocation, the appellate court reversed. It cited *Redlich* for the proposition that after a conviction for a criminal offense, the State could not then proceed to commit a person as sexually dangerous based upon the same criminal conduct. The court concluded that by analogy the State could not obtain a conviction and then have a conditional release revoked for the same conduct.

In *People v. Harris* (1966), 77 Ill. App. 2d 300, 222 N.E.2d 107, a juvenile was charged under both a juvenile petition and under the Sexually Dangerous Persons Act. After evidence was heard, the sexually dangerous person's petition was dismissed with leave to reinstate and the juvenile was found to be a delinquent and committed to the Illinois Youth Commission. Subsequently, the sexually dangerous person's petition was reinstated, a hearing held, and the minor found to be sexually dangerous. That order was reversed on appeal. This court,

citing *Redlich*, held that: (1) Section 3 of the Act was violated in that there were no criminal proceedings pending when the petition was filed; and (2) even if the juvenile proceedings were deemed to be criminal in nature, they were at an end, and subsequent proceedings would be a nullity.

We are not persuaded that the procedure used here violated the Act. The only express statutory requirement for pendency of criminal charges is that contained in section 3 that the charges be pending when the petition is filed. Unlike in *Harris*, a six-count indictment was pending when the petition was filed here. Unlike in *Redlich* and *Harris*, criminal charges were still pending after the court pronounced defendant to be a sexually dangerous person. Count I of the indictment, to which defendant had pleaded guilty, charged him with the lewd fondling of a child on December 6, 1978. Certain other counts charged somewhat similar sexual conduct with the same child on December 2, 1978, while still other counts charged somewhat different sexual conduct with the same child in November 1978.

The five counts of the indictment were nol prossed on March 2, 1979, the same day the oral pronouncement was made. The report of proceedings does not make reference to the nol pros, but the docket indicates it took place after the oral pronouncement that the defendant was a sexually dangerous person. However, the pronouncement required submission of a written judgment. That was not entered until March 5, 1979. Section 3.01 of the Act (Ill. Rev. Stat. 1977, ch. 38, par. 105—3.01) provides that proceedings under the Act, except as to burden of proof shall be civil in nature and that the Supreme Court Rules shall be applicable. Supreme Court Rule 272 then, as now, stated that when the trial court requires submission of a written final judgment "the judgment becomes final only when the signed judgment is filed" (73 Ill. 2d R. 272). Thus, by the terms of Rule 272 final judgment on the sexually dangerous person's petition was not entered until after disposition of all of the criminal charges.

■ In *West v. West* (1979), 76 Ill. 2d 226, 390 N.E.2d 880, the supreme court noted that the purpose of Rule 272 was to determine the timeliness of filing a notice of appeal. Section 801 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 801) provided that it was applicable to proceedings upon which no judgment had been entered as of the effective date of the Act. The supreme court held that act to be inapplicable to a judgment pronounced before its effective date, but not entered under Rule 272 until after the effective date. The court treated the lapse of time between the pronouncement of the order and its entry insignificant

under those circumstances. Here, there also is no question of timeliness of filing notice of appeal. We likewise treat the lapse of time between pronouncement and entry of the order as insignificant in determining whether the court could properly enter the order. It would seem totally illogical to use Rule 272 as a vehicle for determining that a court, having power to enter an order at the time it was pronounced, loses jurisdiction to complete the formal entry of the order because of the dismissal of other pending matters in the interim.

The proceeding here, unlike in *Redlich* and in *Harris*, was not one where the State was attempting to have the accused committed merely for the same conduct for which he had been convicted in the underlying criminal proceeding. Section 5 of the Act (Ill. Rev. Stat. 1977, ch. 38, par. 105—5), at all times pertinent, stated that "[a]t the hearing on the petition it shall be competent to introduce evidence of the commission by the respondent of any number of crimes together with whatever punishments, if any, were inflicted." Thus, the petition may be based, at least in part, upon conduct for which the respondent has been convicted. Both the petition here and the evidentiary matters of record before the court at the time of adjudication showed that the State was relying on several acts of defendant in addition to that for which he was convicted in the underlying proceeding.

■ We need not decide whether a trial court can find a person guilty of a criminal charge, sentence that person on that charge and then declare that person to be sexually dangerous merely because of that conduct. Here, criminal charges were pending not only when the petition was filed, but at all significant times thereafter. The criminal conduct for which the defendant was convicted was only part of the grounds for the determination that he was sexually dangerous. We need not address other complicated jurisdictional questions raised by defendant because we hold that no violation of the Sexually Dangerous Persons Act occurred. The judgment of commitment was not void.

We now turn to the question of the propriety of the trial court's denial of defendant's application claiming recovery. Section 9 of the Act provides that at the hearing upon an application such as that filed by defendant here, the court shall render judgment as follows:

> "If the patient is found to be no longer dangerous, the court shall order that he be discharged. If the court finds that the patient appears no longer to be dangerous but that it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered, the court shall enter an order permitting such person to go at large subject to

such conditions and such supervision by the Director as in the opinion of the court will adequately protect the public." Ill: Rev. Stat. 1981, ch. 38, par. 105—9.

The only witness to testify at the hearing on defendant's application was Dr. Frank M. Perez, a psychiatric consultant to the Department of Psychiatry at Menard Correctional Center and the person responsible for reviewing defendant's progress during his confinement. Dr. Perez testified that: (1) The defendant had been cooperative in the program of therapy and had made progress in dealing with his frustrations and disappointments; (2) the defendant need not be considered physically dangerous; and (3) the defendant could be better treated for his condition in a less restrictive environment. With respect to the possibility of the defendant performing successfully on a conditional release program, Dr. Perez also testified that the defendant could be expected to manage himself appropriately if he were in an environment with no children and if he were to continue his psychiatric treatment on an outpatient basis. In the opinion of Dr. Perez, defendant would be unlikely to achieve much more improvement while incarcerated and would be more likely to progress if released into a controlled environment in which supervision and therapy were available. Dr. Perez warned that defendant might undergo difficult frustration and that problems might arise if he were to live with children.

Defendant does not contend that he should have been granted an absolute discharge. Rather, he maintains that the court's refusal to grant him a conditional discharge was contrary to the manifest weight of the evidence. In the order denying defendant's application, the court stated that there was no testimony that defendant (1) had recovered, (2) was no longer sexually dangerous, or (3) appeared to be no longer sexually dangerous. Defendant asserts that the court would not grant a conditional discharge unless the defendant presented evidence that he was completely recovered. We do not agree. Recovery was not a required factor for any type of discharge, but it was relevant on the question of defendant's dangerousness.

Dr. Perez did not state directly whether defendant did or did not appear to be dangerous. He did state that defendant was not physically dangerous and he indicated that a better determination on that point could be made if defendant were granted a conditional discharge requiring supervision and therapy.

The case differs from *People v. Richardson* (1975), 32 Ill. App. 3d 621, 335 N.E.2d 619, where the denial of a conditional discharge was held to be contrary to the manifest weight of the evidence. There, the testifying psychiatrist stated that the patient was

mentally ill, but not sexually dangerous. Here, in the absence of testimony as to whether the defendant appeared to be sexually dangerous and because of the testimony that he could relapse into his prior conduct if sufficiently frustrated and in the continual presence of children, we cannot say that a determination that defendant appears to no longer be sexually dangerous is clearly evident. We do not interpret the testimony of Dr. Perez that defendant was not "physically dangerous" to indicate that he would not commit acts in regard to children that would harm them psychologically. In balancing the interests of society in protecting children from psychological damage against the better chance for treating defendant on a conditional discharge, the trial court did not abuse its discretion. *People v. Whitney* (1975), 33 Ill. App. 3d 729, 338 N.E.2d 233.

The judgment of the circuit court is affirmed for the foregoing reasons.

Affirmed.

MILLER, J., concurs.

JUSTICE TRAPP, dissenting:

The rationale and disposition of the majority turns the Sexually Dangerous Persons Act and its present interpretation in case law upon its head.

In a broad sense the statutory scheme for treating sexually dangerous persons has reversed its course from its inception to the present time. As explicated in *People v. Redlich* (1949), 402 Ill. 270, 83 N.E.2d 736, the initial Criminal Sexual Psychopathic Persons Act contemplated a mental disorder of the nature and quality then designated "insanity" so that a person so defined should not be required to plead or stand trial until he had been found to be recovered. Trial upon the charged offense was required following treatment and recovery from the mental disability found by the commitment. *Redlich; People v. Sims* (1943), 382 Ill. 472, 47 N.E.2d 703.

The Sexually Dangerous Persons Act adopted in 1955 provided a different course and expressed a different rationale. In section 9 (Ill. Rev. Stat. 1981, ch. 38, par. 105—9) it provided for discharge of a person found to be a sexually dangerous person when he was subsequently found to be recovered, or a conditional discharge under supervision and culminates in the language:

> "Upon an order of discharge every outstanding information and indictment, the basis of which was the reason for the

present detention, shall be quashed."

Consistently, that section also provided that if there was a violation of a conditional discharge under supervision, the conditional release should be revoked and the person recommitted under the terms of the original commitment. A rational interpretation of such text is that the legislature created an alternative of treatment to that of prosecution upon the charged offense. *People v. Patch* (1972), 9 Ill. App. 3d 134, 293 N.E.2d 661.

In *People v. English* (1964), 31 Ill. 2d 301, 201 N.E.2d 455, the court considered the issue of privilege against self-incrimination where the court ordered a psychiatric examination as provided by the statute. The opinion described the purpose of the Act in the language:

> "Since the Sexually Dangerous Persons Act provides for involuntary confinement, although it be for the treatment of the defendant rather than punishment for a crime, it is natural that some of the same safeguards which are applicable in a criminal prosecution be applied to the proceedings under the act." 31 Ill. 2d 301, 304, 201 N.E.2d 455, 458.

In *People v. Shiro* (1972), 52 Ill. 2d 279, 287 N.E.2d 708, defendant was committed as a sexually dangerous person. He was thereafter transferred from the psychiatric division to the penitentiary where he received no treatment. Defendant sought a hearing claiming recovery. The psychiatrist reported that it could not be stated definitively whether defendant remained dangerous, and the trial court dismissed the petition for discharge. The supreme court stated:

> "The defendant's charge that he had been transferred from the psychiatric division of the penitentiary to the general division of the penitentiary, where he has been receiving no treatment directed to his recovery, should not have been summarily dismissed. Those persons who are adjudged sexually dangerous under the Act are committed to the care of the Director of Corrections, but this does not imply that they are to be treated as criminal prisoners. The Act states that the Director of Corrections 'shall provide care and treatment for the person committed to him designed to effect recovery,' and that such persons shall be held 'in any facility in the Department of Corrections or portion thereof *set aside for the care and treatment* of sexually dangerous persons.' (Emphasis supplied.) Ill. Rev. Stat. 1969, ch. 38, par. 105—8." 52 Ill. 279, 283, 287 N.E.2d 708, 711.

In *People v. Pembrock* (1974), 23 Ill. App. 3d 991, 320 N.E.2d 470, the court discussed the burden of proof required to support commit-

ment as a sexually dangerous person. The court stated:

"While both the civil proceedings in question and criminal prosecutions may result in a loss of liberty, substantial differences exist between them. Foremost among these are that in a commitment under the Act there is no inference of moral blameworthiness since a finding of sexual dangerousness indicates that a defendant's inability to conform to the dictates of the law is the product of a mental illness and, secondly, commitment under the Act, unlike criminal incarceration, is not intended as punishment." (23 Ill. App. 3d 991, 995, 320 N.E.2d 470, 473, *aff'd* (1976), 62 Ill. 2d 317, 342 N.E.2d 28.)

See also *People v. Sly* (1980), 82 Ill. App. 3d 742, 403 N.E.2d 72.

Upon no more authority than the apparent statement of one assistant State's Attorney, that another assistant State's Attorney said it could be done, the prosecution here was permitted to accumulate two inconsistent forms of incarceration—one for punishment as a crime and one as a supposed treatment for a mental condition. Since punishment of incarceration here imposed initially destroys and makes useless any treatment as a sexually dangerous person, the purpose and requirements of the Sexually Dangerous Persons Act are judicially ignored. The order finding defendant a sexually dangerous person should be treated as void and vacated. See *People v. Redlich* (1949), 402 Ill. 270, 83 N.E.2d 736, and *People v. Patch* (1972), 9 Ill. App. 3d 134, 293 N.E.2d 661.